**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard Samuel HUFFHINES,**
**Defendant–Appellant.**

**No. 91–50426.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1992.

Decided June 15, 1992.

Denise Meyer, Deputy Public Defender, Los Angeles, Cal., for defendant-appellant.

Brad M. Sonnenberg, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before: PREGERSON, D.W. NELSON and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

A jury convicted Richard Samuel Huffhines of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). In sentencing Huffhines, the district court considered this crime to be a crime of violence. Because Huffhines had two previous convictions for crimes of violence, the district court treated him as a career offender under Sentencing Guideline § 4B1.1 and sentenced him to 120 months in prison followed by three years of supervised release.

Huffhines appeals his conviction and sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm Huffhines's conviction. We vacate his sentence, because we hold, consistent with our recent opinion in *United States v. Sahakian*, 965 F.2d 740, 742 (9th Cir.1992), that the crime of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) is not a crime of violence under the 1989 amendment to guideline section 4B1.2. We remand for resentencing.

## FACTS

On September 29, 1989, James Shaw reported to the Beverly Hills Police Department that he had been followed by Huffhines, who was driving a Chevrolet Blazer with New Mexico license plates. Detective Stephen Miller investigated the incident. Based on interviews with Shaw and his

wife, Miller learned that Huffhines was a previous friend of Mrs. Shaw.

Shaw showed Miller a picture of Huffhines. He also told Miller that Huffhines had a prior federal conviction for mailing a strychnine-laced pie to his in-laws and a prior Texas conviction for possession of a firearm silencer. Miller confirmed these convictions.

On October 4, 1989, Shaw informed Miller that Huffhines had called the night before insisting that Shaw meet with him. Shaw had told Huffhines to call him at his office the next day. On that day, Miller accompanied Shaw to his office. During the afternoon, Huffhines was spotted in the lobby coffee shop in Shaw's office building. Miller was informed and went to the coffee shop.

According to Miller, as Huffhines was leaving the coffee shop, Miller walked up to him and identified himself as a police officer. Three other officers were in the lobby area, but none was in uniform or displayed any weapon, and no one touched Huffhines. Miller told Huffhines that he wanted to speak to him about a matter he was investigating. When he asked Huffhines his name, Huffhines said "Larry Connelly." Miller told Huffhines to come with him outside the building. Huffhines did so and as soon as he was outside, he was arrested for falsely identifying himself to a police officer in violation of California Penal Code § 148.9. He was searched and a set of car keys was found in his possession.

When he was interviewed by the police, Huffhines denied ownership of a Chevrolet Blazer. By this time, two officers had located a Blazer with New Mexico license plates a few blocks from Shaw's office. The keys found on Huffhines fit the door of this vehicle. The vehicle identification number (VIN) visible on the dashboard was the VIN of another vehicle.

A magistrate issued a warrant to search the Blazer. The search revealed that the VIN on the Blazer's dashboard was false. The Blazer had been stolen. Inside the Blazer the police found a key to room 211

of the Foghorn Harbor Inn Motel in Marina Del Rey.

The police went to this motel on the evening of October 5, 1989. The motel assistant manager, Ric Wilson, informed them that on October 3 room 211 had been rented to a person who gave his name as "Goode" and paid cash for two nights' rent. When the rental period expired at noon on October 5, Wilson had repossessed the room and locked the guest out.

Wilson gave the police permission to search the room. In the course of the search, the police looked beneath a mattress on one of the two beds in the room and found two plastic bags. One of these bags contained the gun which became the subject of Huffhines's indictment. His motion to suppress the evidence of the gun was denied. He was convicted following a jury trial.

The probation officer who prepared Huffhines's presentence report recommended that he be sentenced as a career offender under the Sentencing Guidelines. The district court agreed. It treated Huffhines's conviction of being a felon in possession of a firearm as a crime of violence. Huffhines was classified as a career offender on the basis that he had two prior felony convictions for crimes of violence. *See* Guidelines Manual, § 4B1.1 (Nov. 1990). He was sentenced to 120 months imprisonment and three years supervised release.[1] This appeal followed.

## MOTION TO SUPPRESS EVIDENCE OF THE GUN

■ We accept a district court's findings of fact at a suppression hearing unless they are clearly erroneous. *United States v. Kerr*, 817 F.2d 1384, 1386 (9th Cir.1987). The lawfulness of searches and seizures usually presents mixed questions of law and fact, which we review de novo. *United States v. Linn*, 880 F.2d 209, 214 (9th Cir.1989).

---

1. The presentence report calculated Huffhines's sentence based on a base level of 24 and a criminal history category of VI. The applicable sentencing range was 100 to 125 months.

## A. Huffhines's Arrest

The district court found that Huffhines falsely identified himself to the police prior to his arrest. This finding is not clearly erroneous. *See United States v. Attson,* 900 F.2d 1427, 1433 (9th Cir.) (district court's factual findings on matters of credibility rarely overturned), *cert. denied,* ── U.S. ──, 111 S.Ct. 393, 112 L.Ed.2d 403 (1990).

■ Huffhines argues that even if he falsely identified himself to the police, the district court erred in ruling that this provided probable cause for his arrest under California Penal Code § 148.9,[2] because the police knew his real name. We reject this argument.

Section 148.9 applies even when the police are not deceived by the person giving a false identification. *See People v. Hunt,* 225 Cal.App.3d 498, 275 Cal.Rptr. 367, 370–71 (3d Dist.1990) (officer had probable cause to arrest vehicle passenger under section 148.9 for giving false name when officer received information from DMV indicating passenger was not who he purported to be).

Huffhines next contends that the officers' failure to release him after his arrest, pursuant to California Penal Code § 853.6,[3] shows his arrest was simply a pretext to enable the police to search for evidence of other crimes, and as such the evidence obtained by the search should have been suppressed. He relies on *Taglavore v. United States,* 291 F.2d 262 (9th Cir.1961).

In *Taglavore,* we held that the police had engaged in a "deliberate, pre-planned" scheme to evade the requirements of the fourth amendment by using a traffic arrest warrant to search the defendant. *Id.* at 267. Several factors indicated the arrest was pretextual. It was not ordinary procedure to take a person into custody for a minor traffic violation. *Id.* at 265. The warrant was acquired by an inspector in the vice squad who suspected the defendant of having connections with illegal narcotics activities of the defendant's employer. *Id.* The inspector kept the warrant until after the employer's arrest, late at night, when he gave it to two other officers with instructions to arrest the defendant, and a warning that he might have narcotics in his possession. *Id.*

In the present case, Huffhines was lawfully detained as part of the investigation of Shaw's complaint.[4] During this detention, Huffhines falsely represented himself as another person. A person under lawful detention who falsely represents or identifies himself or herself to a peace officer as another person is guilty of a misdemeanor. Cal.Penal Code § 148.9; *Hunt,* 275 Cal. Rptr. at 370–71. Thus, Miller was authorized to arrest Huffhines.

■ "Whether an arrest is a mere pretext to search turns on the motivation or primary purpose of the arresting officers." *United States v. Smith,* 802 F.2d 1119, 1124 (9th Cir.1986). There is no evidence that Miller's motive for confronting Huffhines was anything other than to investi-

---

**2.** Section 148.9 states, in relevant part:
(a) Any person who falsely represents or identifies himself or herself as another person or as a fictitious person to any peace officer listed in Section 830.1 or 830.2, upon a lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor.
Cal.Penal Code § 148.9(a) (West 1988).

**3.** Section 853.6 provides, in relevant part:
(a) In any case in which a person is arrested for an offense declared to be a misdemeanor, including a violation of any city or county ordinance, and does not demand to be taken before a magistrate, that person shall, instead of being taken before a magistrate, be re-

leased according to the procedures set forth by this chapter.
Cal.Penal Code § 853.6 (West 1985).

**4.** Huffhines does not dispute that Miller had reasonable suspicion to justify detaining him for an investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He concedes that the police had information that a certain individual may have been harassing a couple and someone appearing to be the suspect was present at the coffee shop when the officers arrived. He further concedes that "[a]rguably, this was reasonable suspicion under *Terry* to justify a stop, [but] it at no point escalated to the level of probable cause necessary for the immediate arrest ... that occurred."

gate Shaw's complaint. The only similarity to *Taglavore* is that Miller failed to follow ordinary procedures by not releasing Huffhines pursuant to California Penal Code § 853.6.

We conclude the district court did not clearly err in determining Huffhines's arrest was not pretextual.

### B. Search of the Vehicle

A person who voluntarily abandons property lacks standing to challenge its search. *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir.1986). The inquiry into abandonment "should focus on whether, through words, acts or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search." *Id.*

Evidence established that during his interview at the police station, Huffhines denied ownership or knowledge of the Blazer. He claimed that the keys found on him were keys to his Cadillac, which was parked in Dallas, Texas, and that he had been dropped off near Shaw's office building by a friend in a red Corvette. When asked why his keys fit the Blazer, Huffhines responded with a shrug of his shoulders.

The district court found that Huffhines disavowed any connection to the Chevrolet Blazer. This finding is not clearly erroneous. *See id.* (determination of abandonment reviewed for clear error). Having disavowed any connection to the Blazer, Huffhines may not challenge its search. Thus, we do not consider his argument that the warrant to search the Blazer was not supported by probable cause or that the search was otherwise invalid.

### C. Search of the Motel Room

The police did not have a warrant to search the motel room at the Foghorn Harbor Inn. Huffhines contends this search violated the fourth amendment because it was not justified by exigent circumstances, hot pursuit or a search incident to his arrest. This argument overlooks the fact that this was a consensual search.

A search conducted pursuant to valid consent is an exception to the fourth amendment's warrant and probable cause requirements. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). The motel's assistant manager, Ric Wilson, consented to a search of the motel room on the evening of October 5, after he had repossessed the room for nonpayment of rent.

Huffhines contends the assistant manager's consent was invalid. He argues he continued to have an expectation of privacy in the room after the rental period expired because his arrest prevented him from returning to the motel to renew the rental agreement. We reject this argument.

A guest in a motel has no reasonable expectation of privacy in a room after the rental period has expired. *United States v. Ramirez*, 810 F.2d 1338, 1341 (5th Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987); *United States v. Croft*, 429 F.2d 884, 887 (10th Cir.1970); *see also United States v. Haddad*, 558 F.2d 968, 975 (9th Cir.1977). Here, the rental period ended at noon on October 5. Huffhines was not arrested until after 1:00 p.m. that afternoon. By then the rental period had expired.

Moreover, it was Huffhines's own conduct in giving a false name to the police that precipitated his arrest and prevented him from returning to the motel to renew the rental period. He cannot rely on his own misconduct to extend the period of his expectation of privacy in the motel room. *Croft*, 429 F.2d at 887 (no continued expectation of privacy in rented room when defendant's illegal conduct caused his arrest which prevented his return to extend the rental period); *accord United States v. Reyes*, 908 F.2d 281, 285–86 (8th Cir.1990) (defendant lacked standing to contest warrantless search of a rented locker which occurred after the rental period expired, even though he was prevented from renewing the rental period or removing the locker's contents because of his lawful arrest), *cert. denied*, —— U.S. ——, 111 S.Ct. 1111, 113 L.Ed.2d 220 (1991).

■ Huffhines's fall-back argument is that even if the assistant manager's consent to search the room was valid, the police exceeded the scope of the assistant manager's consent when they searched under the mattress where they found the gun. We disagree.

We review the totality of the circumstances to determine whether a search exceeds the scope of consent. *United States v. Mines*, 883 F.2d 801, 803 (9th Cir.), *cert. denied*, 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989). A district court's finding as to the scope of consent is reviewed for clear error. *Id.*

The district court found that a search under the mattress came within the scope of the assistant manager's consent. The court stated:

> [T]he innkeeper did have the right to consent to a search of the room other than the personal belongings of the defendant. The search of the room, in the view of the court, will include the search under the mattress where the alleged gun was found.... And since the mattress and the bed belongs to the hotel, the consent to search it was appropriately given by the hotel.

Rep.Tr., Vol. 4 at 6.

We agree with the district court. Although the assistant manager lacked the authority to consent to a search of Huffhines's belongings left in the room, it was not clearly erroneous for the court to find that the assistant manager's consent to a search of the room included the area under the mattress where the gun was found. *Cf. United States v. Brandon*, 847 F.2d 625, 630 (10th Cir.) (court's determination that search under the mattress of defendant's motel room, exposing narcotics, did not exceed scope of consent was not clearly erroneous where consent was based on defendant's request that police retrieve money left on the bed), *cert. denied*, 488 U.S. 973, 109 S.Ct. 510, 102 L.Ed.2d 545 (1988).

Huffhines further contends the officers should have obtained a warrant prior to opening the plastic bag found under the mattress. He argues the bag, which contained the gun, was an opaque container that concealed its contents from plain view.

■ Huffhines's container argument is meritless. There can be no reasonable expectation of privacy in a container if its contents can be discerned from its outward appearance. *Arkansas v. Sanders*, 442 U.S. 753, 764–65 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235 (1979);[5] *United States v. Miller*, 769 F.2d 554, 558 (9th Cir.1985). The gun was in the bag, and Officer Lombardi, who searched the motel room, testified at trial that he could tell what was in the bag by looking at it. This testimony was neither challenged nor controverted. *See United States v. Miller*, 929 F.2d 364, 365 (8th Cir.) (police could open bag without a warrant because its size and shape indicated it contained a gun), *cert. denied*, —— U.S. ——, 112 S.Ct. 139, 116 L.Ed.2d 105 (1991).

## SUFFICIENCY OF THE EVIDENCE

"[O]ur review [of the question of sufficiency of the evidence] is limited to the question whether, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the elements of the crime beyond a reasonable doubt." *United States v. Mares*, 940 F.2d 455, 460 (9th Cir.1991).

Huffhines argues the evidence was insufficient to establish his possession of the gun. At best, he says the evidence established only that he had been present in the room where the gun was found.

At trial, Huffhines called Michael Connelly as a witness. Connelly testified that the gun found under the mattress belonged to him. He said he had bought the gun at a gun show in Las Vegas where he met Huffhines. He stated that he accepted a ride to Los Angeles with Huffhines and

---

**5.** We recognize that *Sanders* was recently overruled by *California v. Acevedo*, —— U.S. ——, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991). However, because *Acevedo* was expressly based on an application of the automobile exception,

*see id.* 111 S.Ct. at 1990–91, it does not alter the principle set forth in *Sanders* that there is no reasonable expectation of privacy in a container that discloses its contents.

stayed in his room at the motel. He further testified that he put the gun under the mattress when Huffhines was not present and forgot to take it with him when he left.

▬ When premises are shared by more than one person, more than the mere proximity to the contraband, presence on the property where it is found, and association with the person or persons having control of it is required to establish constructive possession. *United States v. Rodriguez,* 761 F.2d 1339, 1341 (9th Cir.1985).

▬ Here, the motel clerk testified that Huffhines rented the room and checked in alone. He rented the room on October 3 for two days. The gun was found on October 5. The clerk testified that each time Huffhines came to the desk with questions he was alone, and as far as the motel clerk was aware no one else was staying in the room. An expert from the police department's crime laboratory testified that Huffhines's fingerprints were found on the plastic bag that contained the gun, and on an ammunition container. At a pretrial conference, Huffhines told a special agent of the Bureau of Alcohol, Tax and Firearms: "You still have the firearm I had."

Based on this evidence, a reasonable jury could have found beyond a reasonable doubt that Huffhines exercised dominion over, and had constructive possession of, the gun that was found in the motel room. *Id.* (constructive possession requires evidence that the defendant knew of the presence of the contraband and had power to exercise dominion and control over it).

## ADMISSION OF PRIOR CONVICTION

In proving that Huffhines was a felon, the government introduced into evidence a copy of a Texas state court judgment certified by the Texas Department of Corrections. Huffhines argues that Texas law precluded the admission of this judgment because it was not certified by the clerk of the original convicting court. This argument is meritless.

▬ Copies of judgments certified by the Texas Department of Corrections custodian of records are admissible under Tex-

as law. *Reed v. State,* 811 S.W.2d 582, 583 n. 3, 586–87 (Tex.Crim.App.1991) (en banc). Moreover, they are admissible in federal court under Federal Rule of Evidence 902(4). *United States v. Darveaux,* 830 F.2d 124, 126 (8th Cir.1987); *see also United States v. Dancy,* 861 F.2d 77, 79 (5th Cir.1988) (copy of prior criminal judgment prepared and certified by official of California Department of Corrections admissible under Rule 902(4) in section 922(g)(1) prosecution).

## SENTENCING

Under Guidelines Manual § 4B1.1 (Nov. 1990), a court may classify a defendant as a career offender if his offense is a felony that is a crime of violence and he has two prior felony convictions for crimes of violence. We review de novo a district court's interpretation of the sentencing guidelines. *United States v. Nazifpour,* 944 F.2d 472, 473 (9th Cir.1991).

### A. Unlawful Possession of a Firearm Silencer

The district court used Huffhines's Texas conviction for unlawful possession of a firearm silencer and a federal conviction for mailing an injurious article as the two prior felony convictions for crimes of violence. Huffhines contends his prior conviction for unlawful possession of a firearm silencer should not be counted as a prior crime of violence under section 4B1.1 because a silencer does not pose a threat as does a gun or other weapon.

▬ A categorical approach, by which only the statutory definition of the crime is examined, is appropriate to determine whether a prior conviction is a crime of violence under section 4B1.1. *United States v. Alvarez,* 960 F.2d 830, 837 (9th Cir.1992). The crime of possession of a firearm silencer does not have as an element the use, attempted use or threatened use of physical force required by section 4B1.2(1)(i). *See* Tex.Penal Code Ann. § 46.-

06(a)(4) (West 1989 & Supp.1992).[6] Thus, in order for the offense to be a crime of violence, it must "involve[ ] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii).

The unlawful possession of a silencer presents such a risk. In *United States v. Dunn*, 946 F.2d 615, 620–21 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991), we held that possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) constituted a crime of violence for purposes of section 4B1.1. We noted that, under 26 U.S.C. § 5861(d), not all firearms must be registered, only those that Congress found to be inherently dangerous and lacking in lawful purposes, such as sawed-off shotguns and grenades. We reasoned that the possession of an unregistered firearm of the kind defined in section 5845 involved a blatant disregard of the law and a substantial risk of improper physical force. *Id.* at 621.

This reasoning also applies to the unlawful possession of a silencer. A silencer is specifically listed in section 5845's definition of "firearm." 26 U.S.C. § 5845(a)(7). Like a sawed-off shotgun and other firearms of the kind enumerated in that section, a silencer is practically of no use except for a criminal purpose. *See United States v. Kayfez*, 957 F.2d 677, 679 (9th Cir.1992) (silencer rarely possessed for lawful purpose). Indeed, the silencer Huffhines was convicted of possessing was attached to a loaded gun. Possession of a silencer thus demonstrates a disregard of law and a substantial risk of improper physical force. *See id.* (possession of an unregistered silencer threatens personal safety).

Huffhines asserts that under the test applied in *United States v. Potter*, 895 F.2d 1231 (9th Cir.), *cert. denied*, —— U.S. ——,

110 S.Ct. 3247, 111 L.Ed.2d 757 (1990), his conviction for possession of a silencer is not a crime of violence. In *Potter*, we analyzed the defendant's prior conviction for purposes of sentencing under 18 U.S.C. § 924(e)(1).[7] We stated: "If the defendant could have been convicted of the prior crime without using or threatening force against or risking serious injury to another person, then the prior conviction does not constitute a 'violent felony' and cannot be used to enhance his sentence." *Id.* at 1237.

The possession of a silencer qualifies as a "violent felony" under *Potter*. By analogy to *Dunn*, if possession of a silencer demonstrates a risk of improper physical force, it necessarily also carries a risk of serious injury, one of the tests for a "violent felony" under *Potter*. The district court correctly determined that Huffhines's prior conviction was a crime of violence.

**B. Felon in Possession of a Firearm**

In sentencing Huffhines as a career offender under guideline section 4B1.1, the district court relied on *United States v. O'Neal*, 937 F.2d 1369, 1375 (9th Cir.1990), and held that the crime of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), is a crime of violence. Section 4B1.2 of the guidelines defines "crime of violence" for purposes of section 4B1.1. On November 1, 1989, section 4B1.2 was amended. Huffhines was sentenced under the 1989 version of section 4B1.2.

The sentence which we reviewed in *O'Neal* was imposed under the pre–1989 version of section 4B1.2. In *United States v. Sahakian*, 965 F.2d at 742 (9th Cir.1992), we stated that the 1989 amendment to section 4B1.2 "called into question the continuing viability of *O'Neal*'s conclusion that being a felon in possession of a firearm is a crime of violence for purposes of the Career Offender guideline." We held that a

---

**6.** Section 46.06(a)(4) provides that "[a] person commits an offense if he intentionally or knowingly possesses, manufactures, transports, repairs, or sells: a firearm silencer." Tex.Penal Code Ann. § 46.06(a)(4). An offense under this section is a felony. *Id.* at § 46.06(e).

**7.** Section 924(e)(1) requires that all those convicted under 18 U.S.C. § 922(g) who have three

prior convictions for a violent felony or a serious drug offense, or both, receive a minimum sentence of fifteen years. 18 U.S.C. 924(e)(1) (1988). The term "violent felony" is defined in section 924(e)(2)(B). The language of U.S.S.G. § 4B1.2, defining "crime of violence," is derived from 18 U.S.C. § 924(e). U.S.S.G. App. C, amend. 268.

"conviction of being a felon in possession [of a firearm] is not a conviction of a crime of violence under the 1989 amendment." *Sahakian*, 965 F.2d at 742.

Consistent with *Sahakian*, we vacate Huffhines's sentence and remand to the district court for resentencing on the basis that Huffhines's crime of conviction, felon in possession of a firearm, 18 U.S.C. § 922(g)(1), is not a crime of violence for sentencing under guideline section 4B1.1.

Conviction AFFIRMED. Sentence VACATED and case REMANDED for resentencing.