5 F.3d 542
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellant,
v.
Michael Joseph MANUS, Defendant-Appellee.
 No. 92-10229.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1993.
Decided Sept. 16, 1993.
 
 Appeal from the United States District Court, for the District of Nevada, D.C. No. CR-91-00045-LDG(R); Lloyd D. George, District Judge, Presiding.
 D.Nev.
 AFFIRMED IN PART, REVERSED IN PART.
 Before: CHOY, SCHROEDER, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The United States appeals the district court's grant of defendant Michael Joseph Manus' motion to suppress. We reverse.
 
 
 3
 * While on patrol, National Park Service Ranger Bradford Lammers saw Manus and his companion Shauna Lierly gathering rocks at a remote beach in the Lake Mead National Recreation Area. As Lammers approached the beach to tell Manus and Lierly that gathering rocks was prohibited, he saw their automobile and through the window noticed a PVC pipe on the rear floorboard. At that time, Lammers did not observe anything in the car that he believed constituted evidence of wrongdoing.
 
 
 4
 Once on the beach, Lammers saw an unconcealed rifle lying on the ground next to Manus and Lierly's belongings. He searched their belongings and unloaded the rifle. Lammers then approached Manus and Lierly, informed them that rock gathering was prohibited and asked them for identification. Manus showed Lammers his gaming card. Lammers requested further identification and Manus told him that his wallet was in the car. Lierly indicated that her identification might also be in the car.
 
 
 5
 Lammers told Manus to go with him to the car while Lierly waited on the beach. Lammers also said he wanted to lock the rifle in the trunk for safety purposes. At this time, Lammers had no intention of citing or arresting either Manus or Lierly. Manus opened the trunk and Lammers put the rifle inside. Lammers then took the car keys and said that he needed to do a search before he would allow Manus to go into the car and get his wallet. During the search, Lammers picked up the pipe he had seen earlier and shook it to determine if it contained rocks from the beach. When he did this he noticed that it had a fuse inserted into it and was a pipe bomb. Lammers then arrested Manus for unlawful possession of an explosive device.
 
 
 6
 After his arrest, Manus made statements to Lammers in response to questions asked after the discovery of the pipe bomb. Manus was not advised of his Miranda rights, nor did he waive those rights before answering Lammers' questions. The next day Lammers made additional statements to two Alcohol, Tobacco and Firearms ("ATF") agents after being advised of his Miranda rights and waiving them. Manus was indicted by a federal grand jury for unlawful making of a firearm and possession of an unregistered firearm, in violation of 26 U.S.C. Secs. 5861(f) and 5861(d).
 
 
 7
 Manus filed a motion to suppress the evidence seized as a result of Lammers' search of the vehicle, including the explosive device, as well as statements made after the search. An evidentiary hearing was held before a magistrate who recommended that the motion to suppress be granted as to the statements to Lammers but denied as to the physical evidence and statements to the ATF agents. Manus filed an objection to the magistrate's report and recommendation. The district court entered an order granting suppression of the statement made to Lammers and after an evidentiary hearing, the district court granted Manus' motion to suppress in its entirety.
 
 II
 
 8
 The lawfulness of a search and seizure is a mixed question of fact and law that this court reviews de novo. United States v. Huffhines, 967 F.2d 314, 316 (9th Cir.1992). The ultimate conclusion of the lawfulness of a search is reviewed de novo, while findings of fact are reviewed for clear error. United States v. Nance, 962 F.2d 860, 862 (9th Cir.1992).
 
 
 9
 The government argues that the search of the car was a reasonable protective search under Michigan v. Long, 463 U.S. 1032 (1983), and that the district court's ruling should therefore be reversed. In Michigan v. Long, the Supreme Court held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Id. at 1049 (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).
 
 
 10
 At the hearing before the magistrate, Lammers testified:
 
 
 11
 Because of the nature of the violation I was concerned for my safety. So before I let them have access to the vehicle, I searched it to make sure there was no firearms. Also, I wanted to make sure there was no more rocks and make sure there was no more firearms, because that is a violation, to have a firearm inside the vehicle.
 
 
 12
 Similarly, at the evidentiary hearing before the district court, Lammers testified that he searched the car to be sure there were no more rocks or firearms or weapons that could be used against him.
 
 
 13
 The district court's decision to grant the motion to suppress turns on its finding that: "Manus' possession of the unconcealed, loaded hunting rifle[1] in a remote area of Lake Mead is more consistent with an intent to shoot tin cans or rabbits than with an intent to injure others." However, nothing in the record supports the finding that the rifle was to shoot cans or rabbits. When Lammers approached Manus, he was collecting rocks and the rifle was lying on the ground with his belongings. Nothing in the testimony from either evidentiary hearing establishes why Manus had the rifle with him or whether Lammers thought the rifle was for protection or for target practice or hunting. Instead, the record merely establishes that a loaded rifle was found in an area of the park where possession of a loaded firearm was a violation of park regulations.[2] Additionally, Manus and Lierly were engaged in illegal rock collecting and were in a remote area of the park. While they cooperated with Lammers during his questioning, their cooperation does not make Lammers' fear that there might be other weapons in their car unreasonable. These facts support the government's assertion that Lammers possessed a reasonable belief based on "specific and articulable facts" that Manus was dangerous. We affirm the grant of the motion to suppress as to the statement to Lammers but reverse as to the physical evidence and statement to the ATF agents.
 
 
 14
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 The government argues that the district court mistakenly referred to the rifle as a ".22 caliber hunting rifle" while the photo entered into evidence showed that it was a replica of an Army M-16 assault rifle manufactured to fire .22 caliber rounds. The rifle was not identified as an assault rifle at either hearing and we refuse to label it as an assault rifle on appeal. Our analysis does not turn on the classification of the rifle and whether the rifle would be more properly classified as an assault rifle as opposed to a hunting rifle is not determinative
 
 
 [2]
 Our conclusion is limited to the factual situation presented by this case. We offer no opinion as to whether Lammers' belief that Manus was dangerous would be reasonable if it was clear from the circumstances that the rifle was only for purposes of target practice or hunting