12 F.3d 1110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raul Olquin MONTALVO, Defendant-Appellant.
 No. 92-30300.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 31, 1993.
Decided Nov. 18, 1993.
 
 Before: WALLACE, Chief Judge, BOOCHEVER, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Raul Olquin Montalvo appeals his sentence of 27 months following his plea of guilty to five counts of firearm violations. He claims that the district court erred by not grouping together all five counts under the Sentencing Guidelines. We affirm.
 
 I. BACKGROUND
 
 3
 The indictment charged Montalvo, a convicted rapist, with one count of being a felon in possession of a Winchester shotgun in violation of 18 U.S.C. Secs. 922(g)(1) and 924(a)(2) (1988); two counts of being a felon in possession of a "KK" brand shotgun in violation of the same statutes as above; one count of making a false statement in the acquisition of the "KK" brand shotgun (when reclaiming it from a pawnbroker), in violation of 18 U.S.C. Secs. 922(a)(6) and 924(a)(1)(B) (1988); and one count of possessing an unregistered sawed-off shotgun, in violation of 26 U.S.C. Secs. 5841, 5861(d) and 5871 (1988). The sawed-off shotgun was the same "KK" brand shotgun named in all but the first count. Montalvo had sawed off the barrel of the shotgun himself, after reclaiming it from the pawnbroker. All the offenses occurred between February 1991 and the end of June 1991.
 
 
 4
 Montalvo pled guilty to all five counts. At his sentencing on July 24, 1992, the district judge grouped the first count involving the Winchester shotgun separately from the four remaining counts involving the "KK" brand shotgun. Montalvo was sentenced to 27 months imprisonment and two years supervised release.
 
 II. ANALYSIS
 
 5
 We review de novo the district court's application of the Sentencing Guidelines. United States v. Kohl, 972 F.2d 294, 297 (9th Cir.1992).
 
 
 6
 A. The applicable version of the Sentencing Guidelines
 
 
 7
 Firearm offenses such as Montalvo's are governed by Section 2K2.1 of the United States Sentencing Guidelines. Section 3D1.2 of the United States Sentencing Guidelines provided, both at the time of Montalvo's offenses and at the time of his sentencing, that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group" for the purposes of sentencing. U.S.S.G. Sec. 3D1.2 (Nov. 1990 & Nov. 1991). The version of the Guidelines in effect when Montalvo committed his crimes in 1991 ("1990 Guidelines") left it up to the district court to determine case-by-case whether firearm offenses under Sec. 2K2.1 should be grouped. U.S.S.G. Sec. 3D1.2(d) (Nov. 1990). The district court applied the 1990 Guidelines and declined to group Count 1, involving the Winchester, with the other four counts involving the "KK" brand shotgun.
 
 
 8
 Montalvo claims that the district court should have applied the version in effect at his sentencing in 1992 ("1991 Guidelines"), under which offenses covered by Sec. 2K2.1 automatically are grouped together. U.S.S.G. Sec. 3D1.2(d) (Nov. 1991). If the court had grouped all the counts, Montalvo's total offense score would have been one point lower, with a range of 24-27 months imprisonment, rather than the 27-33 month range he received.
 
 
 9
 Normally, a district court applies the version of the Sentencing Guidelines in effect on the date of sentencing. United States v. Warren, 980 F.2d 1300, 1304 (9th Cir.1992), cert. denied, --- S.Ct. ---- (U.S., Nov. 1, 1993) (No. 93-5755). If the retroactive application of the Guidelines in effect at sentencing would disadvantage the defendant, however, then the prohibition against ex post facto laws requires the district court to apply the Guidelines in effect at the time of the offense. Id.
 
 
 10
 The district court cannot apply the Guidelines piecemeal; all the provisions of the appropriate version must be used in sentencing. Id. at 1306. Assuming, without deciding, that all Montalvo's five counts would be grouped under the 1991 Guidelines, the application of all the 1991 Guidelines would make his overall sentence considerably higher.
 
 
 11
 Under Guideline Sec. 2K2.1(a)(3) (Nov. 1991) governing firearms offenses at the time of Montalvo's sentencing, when "the defendant had one prior felony conviction of ... a crime of violence ... and the instant offense involved a firearm listed in 26 U.S.C. Sec. 5845(a)" (which includes a sawed-off shotgun), the base offense score for Montalvo's possession of the unregistered sawed-off shotgun would have been 22. This is a 4-point increase from the base offense level of 18 provided for in the 1990 Guidelines in effect at the time Montalvo committed his offense. See U.S.S.G. Sec. 2K2.1(a)(1) (Nov. 1990). Following the remaining calculation of his sentence under the Guidelines, Montalvo's overall score would have increased from 17 to 21, and his imprisonment range would have risen from 27-33 months to 37-46 months, if the district judge had applied the 1991 Guidelines in effect at the time of sentencing.
 
 
 12
 Because the 1991 Guidelines in effect at the time of Montalvo's sentencing would have increased Montalvo's sentence, their application violates the Ex Post Facto Clause, U.S. Const. art. I, Sec. 9, cl. 3. The district court properly applied the 1990 Guidelines in effect at the time of Montalvo's offenses.
 
 B. Grouping the firearms counts
 
 13
 We still must determine whether the district judge was correct in separating the count involving the Winchester from the counts involving the "KK" brand shotgun. Under the 1990 Guidelines in effect at the time of Montalvo's offenses, firearms violations fell into a set of crimes for which "grouping ... may or may not be appropriate." U.S.S.G. Sec. 3D1.2(d) (Nov. 1990). Whether to group the crimes depended upon "a case-by-case-determination ... based upon the facts of the case and the applicable guidelines." Id. The application note elaborates:
 
 
 14
 Ambiguities should be resolved in accordance with the purpose of this section ... i.e. to identify and group "counts involving substantially the same harm." Thus, for so-called "victimless" crimes (crimes in which society at large is the victim), the grouping decision must be based primarily upon the nature of the interest invaded by each offense.
 
 
 15
 Id. comment. (n. 2).
 
 
 16
 We agree with the district judge that the count involving the Winchester shotgun properly was separated from the counts involving Montalvo's possession of, false statement regarding, and sawing off of the "KK" brand shotgun. A shotgun altered by the shortening of its barrel is "inherently dangerous, lack[s] usefulness except for violent and criminal purposes and [its] possession involves the substantial risk of improper physical force." United States v. Hayes, No. 91-30432, slip op. 11417, 11421 (9th Cir. Oct. 8, 1993). We have therefore characterized the possession of an unregistered sawed-off shotgun as a "crime of violence" for the purposes of sentencing under some Guideline provisions. See id. at 11420 (possession of unregistered sawed-off shotgun is crime of violence under Career Offender provision of Guidelines, U.S.S.G. Sec. 4B1.1). Congress enacted 26 U.S.C. Sec. 5861(d), requiring the registration of sawed-off shotguns, because it recognized that such weapons were "practically of no use except for a criminal purpose." United States v. Huffhines, 967 F.2d 314, 321 (9th Cir.1992).
 
 
 17
 In contrast with the offense of possession of an unregistered sawed-off shotgun, we have held that the crime of felon in possession of an unaltered firearm such as the Winchester shotgun, is not a crime of violence in construing Guidelines Sec. 4B1.2. Id. at 322 (felon in possession of a firearm is not a crime of violence under 1989 amendment to Guidelines Sec. 4B1.2). See also United States v. Garcia-Cruz, 978 F.2d 537, 543 (9th Cir.1992) (felon in possession of firearm not crime of violence under Armed Career Criminal Act, 18 U.S.C. Sec. 924(e) (1988)), cert. denied, 113 S.Ct. 2453 (1993).
 
 
 18
 Because the possession of the Winchester shotgun and the possession of the unregistered sawed-off shotgun involved different harms, we affirm the district judge's decision under the 1990 Guidelines not to group the counts involving the two different weapons.[1]
 
 III. CONCLUSION
 
 19
 Montalvo's sentence is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The government argued at the sentencing hearing that all the counts involving the "KK" brand shotgun should be separate from the count involving the Winchester because Montalvo redeemed the "KK" shotgun from the pawnbroker and sawed it off during a domestic dispute with his wife, who complained that she feared for her life, and Montalvo's actions regarding the "KK" shotgun were thus a separate scheme or plan. The government also argued that the sawed-off shotgun by its nature presented a different societal harm. Although it may have been more logical to group together all the counts involving both shotguns before the "KK" shotgun was sawed off (Counts I-IV) separately from the one count involving the sawed-off shotgun (Count V), a different configuration would not affect our ruling that it was proper not to group all the five counts, nor would it have affected Montalvo's sentence