UNITED STATES of America,
Plaintiff–Appellant,

v.

Kevin L. POULSEN, et al.,
Defendant–Appellee.

No. 94–10020.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 1994.

Decided Dec. 8, 1994.

Robert K. Crowe, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellant.

Paul B. Meltzer, Meltzer & Leeming, Santa Cruz, CA, for defendant-appellee.

Before: ALARCON and HALL, Circuit Judges, and KING,* District Judge.

ALARCON, Circuit Judge:

The Government appeals from the order granting Kevin Poulsen's motion to suppress computer tapes turned over to the police after they were seized by the manager of the Menlo–Atherton Storage Facility ("Menlo") because Poulsen failed to pay rent when due on a storage locker. Poulsen filed a motion to suppress. The Government requested dismissal of the motion on the ground, *inter alia*, that Poulsen did not have a legitimate expectation of privacy. The district court concluded that Poulsen had a legitimate expectation of privacy in the contents of the locker.

The district court granted the motion to suppress the computer tapes because it concluded that the manager did not have apparent authority to consent to the search of the contents of the storage locker. We do not reach the merits of the district court's ruling on the alleged Fourth Amendment violation because we conclude that Poulsen has not demonstrated that he had a legitimate expectation of privacy in the contents of his locker after the manager of the storage facility seized the property because the rent was overdue.

## I.

### PERTINENT FACTS AND PROCEDURAL HISTORY

On April 28, 1987, Poulsen entered into a rental agreement for a storage unit with Menlo. Poulsen signed the rental agreement using the alias "John Anderson."

---

* Honorable Samuel P. King, United States Senior District Judge, for the District of Hawaii, sitting by designation.

On January 8, 1988, the rent on the Anderson unit was 71 days in arrears; Poulsen owed Menlo $155.50. On that date, Menlo mailed a preliminary lien notice to John Anderson at the false address that Poulsen had provided on the rental agreement. The preliminary lien notice indicated the amount that was owed, and contained the following warning:

> If this sum is not paid in full within 14 days from the date of this notice your right to use the storage space and/or facility will terminate, you will be denied access, and an owner's lien on any stored property will be imposed.

This notice was returned to Menlo as undeliverable. On February 2, 1988, more than fourteen days after the date of the notice, Poulsen went to Menlo. He paid $70.00 towards the balance of the overdue rent on his storage unit. At that time, Poulsen provided Menlo with a second false address. A Menlo employee made a notation in Menlo's files that indicated the amount that Poulsen had paid, the amount that he still owed, and that he "want[ed] to know about access." That same day, Menlo mailed a second preliminary lien notice to the new address provided by Poulsen. This notice was returned to Menlo as undeliverable.

On February 8, 1988, Larry Tyson, the manager of Menlo, entered the Anderson unit to remove its contents. Tyson saw "a large amount of telecommunications equipment and manuals [that] apparently belonged to [PacBell]." Tyson transferred all of the property from the Anderson unit to one that was under his exclusive control ("Tyson's unit"). Thereafter, he called the Redwood City Police Department to inform them that he believed he had found stolen property in the Anderson unit. A Redwood City Police dispatcher called PacBell to request that a PacBell representative be sent to Menlo to examine the property that Tyson had found in the Anderson unit.

The following day, a Redwood City Police officer and John Von Brauch, a special investigator for PacBell, went to Menlo to view the property taken from the Anderson unit. Von Brauch testified that when he examined the property in Tyson's unit, he was acting solely in the interests of PacBell. When Von Brauch entered the Tyson unit, he observed numerous items that he believed had been stolen from PacBell. Specifically, Von Brauch saw a coin-operated telephone, computer manuals that contained proprietary PacBell information, PacBell identification badges, PacBell test equipment, and large reel-to-reel computer tapes.

With Tyson's consent, Von Brauch took some of the reel-to-reel computer tapes to PacBell. He described the tapes as being of the variety typically used in "large main frame or front-end processors." Von Brauch testified that it would be highly unlikely to use this type of computer tape with a home computer.

Von Brauch testified that he thought that the reel-to-reel tapes belonged to PacBell for two reasons. First, he believed that many of the other items in Tyson's unit had been stolen from PacBell. Second, PacBell used reel-to-reel tapes that were similar to those found in Tyson's unit. Von Brauch was unsuccessful in accessing the information on these tapes because the tapes were formatted in the UNIX operating system. PacBell does not use UNIX on its computers.

On February 10, 1988, Tyson notified the Menlo Park Police Department that he had found stolen property in the Anderson unit. The Redwood City Police Department had referred the case to the Menlo Park Police Department after determining that the Menlo–Atherton Storage Facility was in the Menlo Park Police Department's jurisdiction.

Detective James Neal of the Menlo Park Police Department went to Menlo to investigate Tyson's report. Tyson informed Detective Neal that John Anderson had rented a storage locker and his rental payments were substantially overdue. Tyson also advised Detective Neal that Menlo had sent two lien notices and that both had been returned as undeliverable. Tyson failed to inform Detective Neal that Poulsen had made a partial payment of $70.00 on February 2, 1988, or that he wanted to know about access to his storage unit.

Shortly thereafter, Von Brauch arrived at Menlo and informed Detective Neal that the

property he had received from Tyson had been stolen from PacBell. Von Brauch also provided Detective Neal with a list of the items that he had taken to PacBell the previous day. Detective Neal requested and received permission from Tyson to take possession of all of the remaining property that he had removed from the Anderson unit. Detective Neal testified that he took possession of these items because Von Brauch had told him that some of the property had been stolen from PacBell. Detective Neal stated that the ownership of the remaining property was in question.

On February 12, 1988, Tyson called Detective Neal to report that Poulsen was at Menlo. Detective Neal arrested Poulsen. After Poulsen was advised of his *Miranda* rights, he consented to a search of his apartment. There, the police discovered additional computer tapes and PacBell equipment.[1] Later that same day, Von Brauch gave the reel-to-reel computer tapes that he had taken from Tyson's unit to Detective Neal.

While Detective Neal was questioning Poulsen, he learned that Poulsen had been employed by the Stanford Research Institute ("SRI"). Detective Neal contacted the Federal Bureau of Investigation ("FBI"). An FBI agent asked SRI to inspect the reel-to-reel computer tapes that had been taken from the Anderson unit by Tyson. SRI reviewed the computer tapes and informed the FBI that the tapes were theirs, but contained nothing of "evidentiary value." SRI returned the tapes to Detective Neal.

Von Brauch requested permission to borrow the tapes to make another attempt to determine whether the tapes contained PacBell proprietary information. On March 18, 1988, representatives of PacBell were successful in accessing some of the tapes. The tapes contained "Air Tasking Orders."

These orders list targets that the United States Air Force will attack in the event of hostilities.

On October 6, 1993, Poulsen filed a motion to suppress the evidence that was seized from his storage unit at Menlo and from his apartment. On December 7, 1993, the district court denied Poulsen's motion to suppress. Poulsen filed a motion for reconsideration. On January 3, 1994, the district court suppressed the computer tapes that had been seized by Tyson from the Anderson unit. The Government filed a timely appeal from this order.

## II.

### JURISDICTION TO REVIEW THE GOVERNMENT'S APPEAL

Poulsen asserts that this court does not have jurisdiction to adjudicate the Government's appeal. The Government argues that this court has jurisdiction pursuant to 18 U.S.C. § 3731.[2]

■ We have held that three conditions must be satisfied before the Government can appeal from a suppression order. First, the Government cannot appeal if the defendant has been put in jeopardy. Poulsen does not claim he has been placed in jeopardy. Second, an appeal must not be taken for the purpose of delay. Third, the suppressed evidence must be substantial proof of a fact material to the proceedings. *United States v. Adrian,* 978 F.2d 486, 491 (9th Cir.1992); *United States v. Loud Hawk,* 628 F.2d 1139 (9th Cir.1979) (en banc), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980).

The United States Attorney's Office for the Northern District of California certified that "the appeal [was] not taken for the purpose of delay." Poulsen contends that

---

1. Poulsen did not file a cross-appeal regarding the search and seizure of the items in his apartment. Thus, the constitutionality of that search and seizure is not before this court. *Turpen v. City of Corvallis,* 26 F.3d 978, 980 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 426, 130 L.Ed.2d 339 (1994) (a court should not address an issue for which a cross-appeal has not been filed).

2. 18 U.S.C. § 3731 states, in pertinent part, that:

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [sic] suppressing or excluding evidence ... if the United States Attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.
*Id.*

the Government's sole purpose in pursuing this appeal is to delay his trial because on October 6, 1993, approximately two weeks prior to the date that his trial was scheduled to begin, the Government filed the second superseding indictment. Poulsen did not argue in the district court that the Government filed the second superseding indictment for the purpose of delay. Thus, he is precluded from raising this issue for the first time on appeal. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (generally, a federal appellate court should not consider issues that were not raised before the trial court); *United States v. Parr*, 843 F.2d 1228, 1232 (9th Cir.1988). Furthermore, the Government's certificate is sufficient to fulfill its burden of establishing that this appeal was not filed for the purpose of delay. *United States v. Helstoski*, 442 U.S. 477, 487 n. 6, 99 S.Ct. 2432, 2439 n. 6, 61 L.Ed.2d 12 (1979); *Adrian*, 978 F.2d at 491.

Poulsen contends that the computer tapes are not material to the charges in the second superseding indictment. In *Adrian*, we stated that for suppressed evidence to be material under 18 U.S.C. § 3731, it must make a:

considerable contribution to cognition of a fact relevant to resolution of the case.... [T]he government [will] have satisfied this additional jurisdictional requirement if, assuming that the evidence would be admissible, a reasonable trier of fact could find the evidence persuasive in establishing the proposition for which the government seeks to admit it.

*Id.* at 491.

In *Adrian*, we noted that § 3731 should be liberally construed, and that courts should interpret " 'substantial proof of a fact material' in a way that facilitates rather than hinders the government's ability to seek review in this court." *Id.* at 491 (citations omitted).

To support his position that the computer tapes are not material to the prosecution, Poulsen cites *United States v. Loud Hawk*, 628 F.2d 1139, 1150 (9th Cir.1979) (en banc), *cert. denied*, 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980). In *Loud Hawk* the defendant was charged with possession of fire-arms, including dynamite, in a multiple count indictment. After the district court suppressed the dynamite and dismissed the indictment, the Government filed an appeal pursuant to 18 U.S.C. § 3731. *Id.* at 1143. We held that the Government had the right to appeal the suppression order only as it related to the dynamite counts; we would not consider the Government's appeal as it related to the non-dynamite counts. *Id.*, 628 F.2d at 1150.

Poulsen concedes that the suppressed evidence could be relevant to the "espionage charges" [3] in the second superseding indictment. Accordingly, we have jurisdiction over the Government's appeal of the trial court's suppression order, because as acknowledged by Poulsen, the suppressed evidence contains substantial proof of a fact material to the espionage charges.

■ Poulsen's assertion that the suppressed evidence is not material because it could not be used to increase his sentence is not persuasive. The standard to determine whether evidence is material is not, as asserted by Poulsen, whether the evidence has the potential for increasing a defendant's term of incarceration. Rather, as discussed *supra*, it is whether the evidence would be persuasive to a reasonable trier of fact in establishing the proposition for which the Government seeks to admit it. *Adrian*, 978 F.2d at 491.

### III.

## A RENTER DOES NOT HAVE A LEGITIMATE EXPECTATION OF PRIVACY IN THE CONTENTS OF A RENTAL UNIT IF THE RENT IS NOT PAID

■ We review de novo the question whether a defendant has asserted a valid Fourth Amendment violation. We review the trial court's underlying factual determinations for clear error. *United States v. Lingenfelter*, 997 F.2d 632, 636–37 (9th Cir. 1993); *United States v. Broadhurst*, 805 F.2d 849, 851 (9th Cir.1986). Before we can reach the merits of Poulsen's Fourth Amendment

---

**3.** There is only one "espionage charge" in the second superseding indictment, which is count 12, for a violation of 18 U.S.C. § 793(e), gathering of defense information.

claim we must determine whether he had a legitimate expectation of privacy regarding the contents of his storage unit at the time Tyson delivered the tapes to the police. *Rawlings v. Kentucky,* 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *Lingenfelter,* 997 F.2d at 636. Poulsen has the burden of demonstrating that he has standing to assert a Fourth Amendment violation. *United States v. Davis,* 932 F.2d 752, 756 (9th Cir.1991).

■ The only search at issue in this appeal concerns the contents of the computer tapes that Tyson found in the Anderson unit. It is undisputed that when Tyson entered the Anderson unit and removed all of its contents, he was not acting as a police agent. Thus, Tyson's conduct in removing the items he found in the Anderson unit did not implicate Poulsen's Fourth Amendment rights. *See Walter v. United States,* 447 U.S. 649, 659, 100 S.Ct. 2395, 2403, 65 L.Ed.2d 410 (1980); *United States v. Reed,* 15 F.3d 928 (9th Cir.1994). (The Fourth Amendment generally does not protect against intrusions by private individuals.)

The Government argues that after January 22, 1988, Poulsen did not have a legitimate expectation of privacy in the contents of the Anderson unit because Menlo had a lien on that property based upon paragraph 17 of the rental agreement, and the sections of the California Business and Professions Code that relate to self-storage rental facilities.

Paragraph 17 of the rental agreement provides as follows:

LIENS: Occupant's stored property will be subject to a claim of lien for unpaid rent and other charges and may be sold to satisfy the lien if the rent or other charges due remain unpaid for fourteen (14) consecutive days. This lien and its enforcement are authorized by Chapter 10 (commencing with Section 21700) of the California Business and Professions Code.

The relevant sections of the California Business & Professions Code ("Cal. Bus. & Prof. Code") are contained in the "California Self–Storage Facility Act," which is set forth at sections 21702, 21703, and 21705 (West 1987).

§ 21702 provides:

The owner of a self-service storage facility and his or her heirs, executors, administrators, successors, and assigns have a lien upon all personal property located at a self-service storage facility for rent, labor, or other charges, present or future, incurred pursuant to the rental agreement, and for expenses necessary for the preservation, sale, or disposition of personal property subject to the provisions of this chapter. The lien may be enforced consistent with the provisions in this chapter.

§ 21703 provides, in pertinent part:

When any part of the rent or other charges due from an occupant remain unpaid for 14 consecutive days, an owner may terminate the right of the occupant to the use of the storage space at a self-service storage facility by sending a notice to the occupant's last known address ..., by certified mail, postage prepaid, containing all of the following:

(a) An itemized statement of the owner's claim showing the sums due at the time of the notice and the date when the sums became due.

(b) A statement that the occupant's right to use the storage space will terminate on a specified date (not less than 14 days after the mailing of the notice) unless all sums due are paid by the occupant prior to the specified date.

(c) A notice that the occupant may be denied access to the storage space after the termination date if the sums are not paid, and that an owner's lien as provided for in Section 21702, may be imposed thereafter.

(d) The name, street address, and telephone number of the owner, or his or her designated agent, whom the occupant may contact to respond to the notice.

§ 21705 provides, in pertinent part:

If a notice has been sent, as required by Section 21703, and the total sum due has not been paid as of the date specified in the preliminary lien notice, the lien im-

posed by this chapter attaches as of that date, and the owner may deny an occupant access to the space, enter the space, and remove any property found therein to a place of safe keeping.

■ It is clear from the express language of the rental agreement that Menlo had a right to assert a lien on Poulsen's property at the time Tyson entered the Anderson unit and removed its contents to the Tyson unit, because at that time, Poulsen's rent was more than 14 days overdue. Additionally, because Poulsen failed to pay the total sum due within 14 days after the date that the first preliminary lien notice was mailed, Menlo had a lien on the contents of the Anderson unit, pursuant to section 21705 of the California Business and Professions Code.

Poulsen asserts that Menlo's lien was not valid because he made a partial payment of $70.00 on February 2, 1988. Poulsen has failed to cite any authority for the proposition that a partial payment prevents the enforcement of a lien pursuant to section 21705. Under section 21705, a tenant must pay the total sum due to avoid the enforcement of the lien. It is undisputed that Poulsen did not pay the unpaid rent by January 22, 1988; thus, Menlo's lien attached as of that date.

■ Poulsen also contends that the second preliminary lien notice altered the terms of the rental agreement by extending the date for payment of the total amount owed until February 16, 1988. To prove that the terms of the contract were modified by the second preliminary lien notice, Poulsen must demonstrate that Menlo intended to modify the terms of the contract. *Hunt v. Smyth*, 25 Cal.App.3d 807, 101 Cal.Rptr. 4 (1972) (the burden of proof is on the party asserting that the contract has been modified and that party must establish that it was the parties' intent to extinguish the prior agreement and to substitute a new one); 1 B.E. Witkin, *Summary of California Law, Contracts* § 909 (1987) (a modification of a contract is a change in obligation which requires mutual assent).

Poulsen has failed to demonstrate that Menlo agreed to modify the terms of the contract. In fact, the undisputed evidence shows that Menlo did not intend to modify Poulsen's contractual obligation to pay the balance of the rental payments on or before January 22, 1988. On February 8, 1988, Tyson entered the Anderson unit to assert a lien over its contents. The fact that Menlo accepted the $70.00 partial payment did not modify the terms of the contract. *See Hunt*, 25 Cal.App.3d at 819 (in the absence of some agreement between the parties to modify a contract, the mere acceptance of a partial payment does not discharge the balance or modify the original terms of the contract).

■ Poulsen maintains that he detrimentally relied on the second preliminary lien notice. Poulsen has failed to demonstrate that he was aware of the contents of the second preliminary lien notice. The record shows that the second preliminary lien notice was returned as undeliverable.

The question whether a lien on the contents of a rental unit is sufficient to extinguish the renter's legitimate expectation of privacy is an issue of first impression in this circuit. There are analogous cases, however, which hold that after the expiration of a rental period, the renter does not have standing to assert a Fourth Amendment violation concerning property left in the unit. For example, in *United States v. Huffhines*, 967 F.2d 314 (9th Cir.1992), we considered whether a defendant, who was a guest in a hotel, retained a legitimate expectation of privacy in his room after the expiration of the rental period. The defendant argued that his arrest, which occurred prior to the search of his hotel room, had prevented him from renewing his rental agreement. We held in *Huffhines* that the defendant's Fourth Amendment rights were not violated because the rental period had expired prior to his arrest. *Id.* at 318. We reasoned that the defendant no longer retained a legitimate expectation of privacy in his room at the time of the search. *Id.*

Similarly, in *United States v. Haddad*, 558 F.2d 968 (9th Cir.1977) a hotel guest, who had been lawfully ejected from his room for being intoxicated, for carrying a gun in the hotel, and for engaging in disorderly conduct, asserted that he had a legitimate expectation of privacy in his room. *Id.* at 975. We

reasoned that because the guest was ejected for good cause, "the room reverted to the control of the management, and the former occupant had no continuing right to privacy in the room." *Id. Accord, United States v. Reyes,* 908 F.2d 281, 285–86 (8th Cir.1990) (defendant lacks standing to object to a warrantless search of a rented locker after the expiration of the rental period); *United States v. Rambo,* 789 F.2d 1289, 1295–96 (8th Cir.1986) (defendant does not have a legitimate expectation of privacy in a hotel room after being lawfully ejected); *United States v. Ramirez,* 810 F.2d 1338, 1341 (5th Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987) (a defendant does not have a legitimate expectation of privacy after the rental period expires); *United States v. Croft,* 429 F.2d 884, 887 (10th Cir.1970) (after the expiration of the rental period, a hotel guest losses his right to use the room and thus, the guest does not have standing to assert a Fourth Amendment violation).

The Second Circuit's decision in *United States v. Rahme,* 813 F.2d 31 (2d Cir.1987), closely parallels the question presented in this matter. In *Rahme,* a hotel clerk allowed police officers to search luggage and a briefcase that were left in a guest's room after the guest had failed to pay his rent and the rental period had expired. *Id.* at 33.

The Second Circuit noted that under a New York statute, a hotel had a lien on any property found in a guest's room for rent due after the expiration of the rental period. *Id.* at 34–35. The court held in *Rahme* that once a hotel "properly takes possession of the luggage, the guest no longer has the right to control access to it and can have no legitimate expectation of privacy in it." *Id.* at 35. The Second Circuit also noted that "once the guest's access to the room is no longer his 'exclusive right,' he has no legitimate expectation of privacy in the room even though he himself still has access." *Id.* at 34. Accordingly, the court held that the defendant did not have standing to assert a Fourth Amendment violation because he did not have a legitimate expectation of privacy in the contents of his hotel room. *Id.*

Similarly, in this case, on January 22, 1988, Menlo had a lien on the contents of Poulsen's storage unit based upon the express terms of the rental agreement between the parties and sections 21702, 21703 and 21705 of the California Business and Professions Code. As of that date, Poulsen lost the right of access to his unit and its contents. Thus, Poulsen could no longer have a legitimate expectation of privacy in the contents of his storage unit.

The fact that Poulsen inquired whether he could have access to his unit demonstrates his awareness that under the rental agreement, he could not enter the unit because his rent had been overdue for more than 14 days. Poulsen's claim that the record shows that he did not intend to abandon his property, does not advance his cause. After the expiration of the rental period, he no longer had a legitimate expectation of privacy in the contents of his storage unit. Thus, whether Poulsen intended to abandon his property is irrelevant.

## IV.

## CONCLUSION

Because Poulsen failed to pay the total amount of the unpaid rent prior to January 22, 1988, he did not have a legitimate expectation of privacy in the contents of his storage unit after that date. Therefore, Poulsen has failed to demonstrate that he has standing to assert a Fourth Amendment violation regarding the search of the contents of the tapes that were found by Tyson in the Anderson unit. Accordingly, the district court's January 3, 1994 order granting suppression of the tapes is REVERSED.