**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

TONY LAWRENCE GUST,
　　　　　*Defendant-Appellant.*

No. 04-30208

D.C. No.
CR-03-00172-WFN

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, Senior District Judge, Presiding

Argued and Submitted
March 10, 2005—Seattle, Washington

Filed April 26, 2005

Before: Ferdinand F. Fernandez, A. Wallace Tashima, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

4645

**COUNSEL**

Gerald R. Smith, Federal Defenders of Eastern Washington and Idaho, Spokane, Washington, for the defendant-appellant.

James A. McDevitt, United States Attorney, and George J.C. Jacobs, III, Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

**OPINION**

GOULD, Circuit Judge:

After entering a conditional guilty plea, Tony Lawrence Gust appeals his judgment of conviction for possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). Pursuant to his plea agreement, Gust challenges the district court's denials of his suppression motion and his renewed suppression motion, arguing that the district court erred in determining that he had no legitimate expectation of privacy in a locked container that the district court found was readily identifiable as a gun case based on its outward appearance. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the district court's denials of Gust's motion to suppress and his renewed motion to suppress and remand for further proceedings consistent with this opinion.

**I**

On February 1, 2003, Officer Wade Hulsizer of the Liberty Lake Police Department received a nonemergency call from a passerby who had observed individuals firing shotguns on private property located in a designated no-shooting zone. Officer Hulsizer drove to the scene of the reported shooting, and, upon hearing shots as he exited his patrol vehicle, called for law enforcement assistance.

Officer Hulsizer's request was answered by Deputy Richard K. Johnson of the Spokane County Sheriff's Department. After Deputy Johnson arrived on the scene, he and Officer Hulsizer entered the property to investigate the shots. They encountered Gust walking with his girlfriend, Regina Lyons, and his friend, Brian Olsen. Gust and his companions were carrying cases that the officers testified they were readily able to identify as gun cases.[1] The officers detained Gust and his

---

[1]There are factual disputes as to whether there were two or three cases, and whether one of the cases was cloth or plastic. However, it is unneces-

companions, and ran a warrant check that came back positive for Olsen and "unconfirmed" for Gust.

Gust informed the police that the trio had been engaged in target practice and that they had received permission to do so. Gust also told the police that the cases he and his companions were carrying contained guns. Officer Hulsizer searched the gun cases[2] and found the sawed-off shotgun that formed the basis for Gust's prosecution and conviction for possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d).[3]

---

sary for us to consider these disputes because there is no question that the case containing the sawed-off shotgun was the plastic Bushmaster case pictured in Defendant's Exhibits 102-06, appended hereto in Appendix A.

[2]There is also a factual dispute as to whether Officer Hulsizer conducted the search with Gust's consent, but it is unnecessary for us to evaluate this dispute because the government did not argue consent as a basis for the search on appeal. Rather, the government sought to justify the search solely on the ground that the contents of the case containing the sawed-off shotgun were readily discernible based on the case's outward appearance.

[3]26 U.S.C. § 5861(d) provides that: "It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer record . . . ."

For the purposes of this code section, a "firearm" is defined as:

> (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

26 U.S.C. § 5845(a).

Gust made a pretrial motion to suppress the sawed-off shot-gun and the statements he made after Officer Hulsizer discovered the gun, arguing that the police had violated his Fourth Amendment rights by searching his locked gun case without a warrant. The government responded by arguing that the search was justified under both the "single-purpose container" and the exigent circumstances exceptions to the warrant requirement. The government further asserted that Gust had consented to the search.

The district court conducted a suppression hearing and then issued a written order denying Gust's motion. Although the district court rejected the government's contentions that the search of Gust's gun case "was a consensual search or conducted under exigent circumstances," it relied on *United States v. Huffhines*, 967 F.2d 314 (9th Cir. 1992), to uphold the search on the ground that Gust "had no reasonable expectation of privacy in the gun case[ ]" because Officer Hulsizer "was able to infer from the distinctive configuration of the case[ ] that [it] contained [a] gun[ ]" and "[i]t was almost as if the gun[ ] were in plain view."[4]

Gust subsequently renewed his motion to suppress, which was denied after the district court held a second hearing. Gust then entered a conditional guilty plea reserving his right to appeal the district court's denials of his motion to suppress and his renewed motion to suppress. This timely appeal followed.

## II

A district court's denial of a motion to suppress is reviewed

---

[4]At the first hearing, the district court orally stated that: "There is no question [the cases Gust and his companions were carrying, including the one containing the sawed-off shotgun] were gun cases. I am absolutely satisfied that they were gun cases. Any of us would recognize those are gun cases, and the officers certainly recognized those were gun cases."

de novo, while the factual findings underlying the denial of the motion are reviewed for clear error. *United States v. Bynum*, 362 F.3d 574, 578 (9th Cir. 2004). "Whether or not an individual's expectation of privacy was objectively reasonable is also reviewed *de novo*." *United States v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004).

Clear error review is "significantly deferential, and we must accept the district court's factual findings absent a definite and firm conviction that a mistake has been committed." *Leavitt v. Arave*, 383 F.3d 809, 815 (9th Cir. 2004) (per curiam) (internal quotation marks omitted). "So long as the district court's view of the evidence is plausible in light of the record viewed in its entirety, it cannot be clearly erroneous, even if the reviewing court would have weighed the evidence differently had it sat as the trier of fact." *SEC v. Rubera*, 350 F.3d 1084, 1093-94 (9th Cir. 2003).

## III

Gust contends that the district court erred in applying the "single-purpose container" exception to uphold the warrantless search of his gun case because his case was "of such a nature that [it] could have contained any number of things," not just a gun. We agree.[5]

## A

The "single-purpose container" exception to the warrant requirement originated in the United States Supreme Court's decision in *Arkansas v. Sanders*, 442 U.S. 753 (1979), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). The central question in *Sanders* was "whether, in

---

[5]Because we reverse the district court's denial of Gust's suppression motion on the ground that the district court erroneously applied the "single-purpose container" exception, we need not address Gust's alternative contention.

the absence of exigent circumstances, police are required to obtain a warrant before searching luggage taken from an automobile properly stopped and searched for contraband." *Id.* at 754. The Court answered this question in the affirmative, but declared:

> Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance.

*Id.* at 764 n.13.[6]

[1] In *Robbins v. California*, a plurality of four justices elaborated on the "single-purpose container" exception, explaining that the exception is:

---

[6]Although the Court overruled the main holding of *Sanders* in *Acevedo* by deciding that "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained," 500 U.S. at 580, we have recognized the continuing applicability of the footnote 13 "single-purpose container" exception in the context of searches of containers outside of vehicles. *See Huffhines*, 967 F.2d at 319 n.5 (acknowledging the overruling of *Sanders* and explaining that "because *Acevedo* was expressly based on an application of the automobile exception, it does not alter the principle set forth in *Sanders* that there is no reasonable expectation of privacy in a container that discloses its contents") (internal citation omitted). Other circuits and a leading treatise on search and seizure have endorsed the principle that the *Sanders* footnote 13 exception has continuing vitality. *See United States v. Villarreal*, 963 F.2d 770, 776 n.2 (5th Cir. 1992) ("While . . . *Sanders* . . . ha[s] been overruled, the logic of the *Sanders* footnote has survived."); *United States v. Donnes*, 947 F.2d 1430, 1437 (10th Cir. 1991) (same); 3 Wayne R. LaFave, Search & Seizure ("LaFave") § 5.5(f) (4th ed. 2004) (surveying cases stemming from *Sanders* footnote 13, including numerous post-*Acevedo* cases).

little more than another variation of the "plain view" exception,[7] since, if the distinctive configuration of a container proclaims its contents, the contents cannot fairly be said to have been removed from a searching officer's view. The same would be true, of course, if the container were transparent, or otherwise clearly revealed its contents. In short, the negative implication of footnote 13 of the *Sanders* opinion is that, unless the container is such that its contents may be said to be in plain view, those contents are fully protected by the Fourth Amendment.

453 U.S. 420, 427 (1981) (plurality opinion), *overruled on other grounds by United States v. Ross*, 456 U.S. 798 (1982).[8]

Applying these principles to the facts before them, the *Robbins* plurality held that the police could not rely on the footnote 13 exception to justify the warrantless search of

[7]Courts have extended the *Sanders* footnote 13 exception beyond the classic "plain view once removed" scenario to cover "plain touch" cases, *see, e.g.*, *United States v. Portillo*, 633 F.2d 1313, 1320 (9th Cir. 1980) (upholding warrantless search where officer lawfully came into contact with paper bag containing gun as he put his hand down to support his weight, because "[u]nder . . . *Sanders* . . . appellants did not possess a reasonable expectation of privacy in the paper bag[ ]" as its contents "were apparent from the outward feel of the container"), and "plain smell" cases, *see, e.g.*, *United States v. Haley*, 669 F.2d 201, 203-04 (4th Cir. 1982) (upholding warrantless search of boxes and bags smelling of marijuana because for the purposes of the *Sanders/Robbins* exception, "[a]nother characteristic which brings the contents [of a container] into plain view is the odor given off by those contents"). These extensions of the *Sanders* exception are not implicated in this appeal.

[8]*Ross* overruled the "precise holding" of *Robbins* that "the police may not conduct a warrantless search of a closed, opaque container found in a car even if they discover the container during a lawful search of the car," but we have since determined that we "may still properly rely upon the *Robbins* plurality's interpretation of footnote 13 of the *Sanders* opinion" because "*Ross* reversed *Robbins* on entirely different grounds relating to searches in the limited context of automobile searches and seizures." *United States v. Miller*, 769 F.2d 554, 559 n.4 (9th Cir. 1985).

packages described as "plastic wrapped green blocks" that were found in the defendant's trunk. *Id.* at 428. Notwithstanding that the officers had smelled marijuana smoke when the defendant opened his car door, that marijuana and drug paraphernalia was found in the passenger compartment of the car, and that the defendant had stated, "[w]hat you are looking for is in the back," the plurality invalidated the search because the record "did not establish that marihuana is ordinarily 'packaged this way.' " *Id.* at 422, 428; *see also id.* at 442 (Rehnquist, J., dissenting). According to the plurality:

> Expectations of privacy are established by general social norms, and to fall within the [single-purpose container] exception of [*Sanders*] footnote [13] a container must so clearly announce its contents, whether by its distinctive configuration, its transparency, or otherwise, that its contents are obvious to an observer. If indeed a green plastic wrapping reliably indicates that a package could only contain marihuana, that fact was not shown by the evidence of record in this case.

*Id.* at 428.[9]

**[2]** In *Miller*, we interpreted the *Robbins* plurality opinion to mean that courts should make judgments about the applicability of the "single-purpose container" exception by evaluating the nature of containers from the objective viewpoint of a layperson, rather than from the subjective viewpoint of a trained law enforcement officer, and without sole reliance on the specific circumstances in which the containers were dis-

---

[9]*Cf. Kyllo v. United States*, 533 U.S. 27, 33, 40 (2001) (noting that reasonableness of a defendant's expectation of privacy is evaluated in terms of what "*society* recognizes as reasonable" and holding that government engaged in unconstitutional search by "us[ing] a device that is not in *general public use*, to explore details of the home that would previously have been unknowable without physical intrusion") (emphasis added).

covered. 769 F.2d at 560. In other words, because the ratio-nale behind the exception, "focuses upon the individual's reasonable expectation of privacy, which is established by 'general social norms,' the extent to which a container's exte-rior reveals its contents should not be solely determined either by the circumstances of its discovery, or by the experience and expertise of law enforcement officers."[10] *Id.* (internal cita-tion omitted). We declined in *Miller* to apply the "single-purpose container" exception to uphold the warrantless search of a plastic bag leaking a white powder that tested negative for cocaine and that was lacking any distinctive shape or odor

---

[10]We are not alone in our construction of *Sanders* footnote 13 to reflect its narrow scope. *See e.g.*, *United States v. Bonitz*, 826 F.2d 954, 956-57 (10th Cir. 1987) (rejecting government's argument that footnote 13 excep-tion applied despite officers' testimony that they recognized the hard plas-tic container as a gun case where "a great many things could have been contained in the case" and trial court found that the case "could equally be suspected of carrying a violin or something like that"); *People v. Smith*, 431 N.E.2d 699, 701 (Ill. App. Ct. 1982), *rev'd on other grounds*, 447 N.E.2d 809 (Ill. 1983) (declining to apply footnote 13 exception because officers' "subjective knowledge [that box found in defendant's truck was of a type commonly used for transportation of marijuana], while relevant, is not conclusive. Rather, the container must be evaluated to determine whether society as a whole would recognize it as one commonly used to carry a controlled substance"). *But see United States v. Williams*, 41 F.3d 192, 197-98 & n.3 (4th Cir. 1994) (stating that "[i]n determining whether the contents of a container are a foregone conclusion, the circumstances under which an officer finds the container may add to the apparent nature of its contents," upholding warrantless search of cellophane-wrapped packages because a veteran officer testified that his experience was that such packages " '*always*' contained narcotics," and distinguishing Ninth Circuit's *Miller* decision because in *Miller* the powder leaking from the bag tested negative for cocaine, which prevented the incriminating nature of the contents of the bag and the contents of the container inside the bag from being a foregone conclusion, and because there was nothing in *Miller* to suggest that the bag searched was surrounded by "*unusual* items" as the packages in the instant case were); *United States v. Cardona-Rivera*, 904 F.2d 1149, 1155 (7th Cir. 1990) ("[I]f the shape or other characteristics of the container, *taken together with the circumstances in which it is seized* . . . proclaim its contents unambiguously, there is no need to obtain a war-rant") (emphasis added).

because the bag "did not, by its outward appearance, announce to the observer that it contained a controlled substance." *Id.*

While it is difficult to evaluate the nature of a container without regard for the context in which it is found or the fact that the searching officer had special reasons to believe the container held contraband, we have previously decided that *Robbins* narrowed *Sanders* along these lines because otherwise the exception could swallow the warrant requirement; to apply *Sanders* footnote 13 without such restrictions could result in a rule that essentially permits law enforcement to conduct warrantless searches of indistinct and innocuous containers based solely on probable cause derived from the officers' subjective knowledge and the circumstances, in contravention of the well-established principle that "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances,'" *Horton v. California*, 496 U.S. 128, 137 n.7 (1990). *See Miller*, 769 F.2d at 560 ("[T]o permit such an extension [of the exception to cases in which the contents of a container are determined by reference to the circumstances of its discovery or the experience and expertise of the police] 'would increase significantly the risk of erroneous police decisions on whether there is sufficient certainty to permit a warrantless search' "); 3 LaFave § 5.5(f) ("[S]uch an extension of the *Sanders* footnote 13 concept [to permit searches based on an exceptionally strong showing of probable cause instead of exclusively on the nature of the container] would outrun its rationale, namely, that a person cannot claim any reasonable expectation of privacy in a container when its 'outward appearance' in the circumstances in which he uses it makes it close to certain what it contains.").

*Miller*'s reading of the *Robbins* plurality opinion to limit the weight a court may give to context and the subjective knowledge and expertise of searching officers when conducting a footnote 13 exception analysis also is proper in light of the manner in which the *Robbins* plurality applied *Sanders* to

the facts of *Robbins*. In holding that the "plastic wrapped green blocks" were outside the scope of the *Sanders* exception, the plurality disregarded that the packages were found under circumstances that made it obvious that the packages contained drugs. *Robbins*, 453 U.S. at 428, 442 (Rehnquist, J., dissenting). As then-Associate Justice Rehnquist stressed in dissent, the officers had already found marijuana and had found drug paraphernalia in the car, and the defendant had then declared that: "[w]hat you are looking for is in the back." Justice Rehnquist observed that these facts were "conspicuously absent" from the plurality opinion, even though the officers could have readily inferred the contents of the packages based on these circumstances and the officers' general awareness "that contraband was often wrapped in this fashion." *Id.*

**B**

Applying these principles underlying the "single-purpose container" exception here, we hold that the district court erred in denying Gust's motion to suppress. The government argues that *Huffhines*, our most recent opinion addressing the "single-purpose container" exception, stands for the proposition that a person cannot have a legitimate expectation of privacy in containers that experienced officers can identify as gun cases. However, as explained above, we rejected that argument in *Miller*,[11] where we made clear that courts should assess the nature of a container primarily "with reference to 'general social norms' " rather than "solely . . . by the experience and expertise of law enforcement officers." 769 F.2d at 560.

The government correctly notes that *Huffhines* upheld the

---

[11]In *Miller*, the government "argue[d, as it does in the instant case,] that the contents of the [opaque] plastic bag [found to contain a fiberglass container of cocaine] were obvious to [the searching agent] because of . . . [the agent's] considerable experience and expertise in drug enforcement." 769 F.2d at 560.

warrantless search of an opaque plastic bag containing a handgun on the ground that "[t]here can be no reasonable expectation of privacy in a container if its contents can be discerned from its outward appearance," 967 F.2d at 319, but this does not mean that *Huffhines* detracted from *Miller* in any way. We addressed the *Sanders* footnote 13 exception only briefly in *Huffhines*, reciting the general rule and holding that it applied because there was uncontroverted testimony from the searching officer that he "could tell what was in the bag by looking at it." 967 F.2d at 319. We neither explained how the officer was able to "tell what was in the bag by looking at it," nor included any other details from the record that would support the broad reading urged by the government. *Id.*

[3] Although our discussion of the "single-purpose container" exception in *Huffhines* was terse, we do not have to interpret it in a vacuum when other precedents like *Robbins* and *Miller* speak to the same issue. Thus, the government cannot rely on the fact that Officer Hulsizer and Deputy Johnson were familiar with Gust's gun case because they had used similar cases during their work as police officers[12] to justify the warrantless search that occurred here. *See Miller*, 769 F.2d at 560; *see also Bonitz*, 826 F.2d at 956 (declining to hold that gun case fell within *Sanders* footnote 13 where the "hard plastic case did not reveal its contents to the trial court [which opined that it did not recognize the plastic case as a gun case] even though it could perhaps have been identified as a gun case by a firearms expert").

---

[12]The officers testified at the suppression hearings that they recognized the plastic cases in dispute as standard gun cases because they were the same type of cases the police department used. For example, Officer Hulsizer testified at the first suppression hearing that the cases in dispute were ones "that [he] recognized from [his] work on the force as the type of cases that [the Liberty police department] used to contain semiautomatic weapons." Deputy Johnson testified that he recognized the cases as "standard gun cases" because "a standard to me is they are basically the same ones we use in our department."

Our analysis does not, however, end here. Even after we reject the government's argument that the search of Gust's gun case can be justified solely on the ground that the officers "recognized the plastic cases because they were exactly like the ones the Liberty Lake Police Department used," the "clearly erroneous" standard of review requires us to affirm the district court's finding that the cases were readily identifiable as gun cases if "the district court's view of the evidence is plausible in light of the record viewed in its entirety." *Rubera*, 350 F.3d at 1093-94.

[4] Our review of the record leads us to the conclusion that once one disregards the officers' testimony regarding their experience with gun cases and the circumstances surrounding the search, the record is devoid of evidence to show that the case in dispute is one that is susceptible to ready identification by the general public as a gun case. In fact, the evidence in the record points to the contrary conclusion that a layperson would not be able to infer the contents of the case based on its outward appearance alone, and leads us to the "definite and firm conviction that a mistake has been committed," even given the "significantly deferential" clear error standard of review. *Leavitt*, 383 F.3d at 815.

For example, there are photographs of the disputed case in the record, labeled as Defendant's Exhibits 102-06 (Appendix A hereto). These photographs depict a nondescript, flat, rectangular case made of black plastic, bearing the mark "BUSH-MASTER." The case has a handle and hasps or fasteners along the opening side so that it can be secured with padlocks, and is virtually identical to some of the guitar cases pictured in Defendant's Exhibit 113.[13] Also, at the first suppression hearing, Deputy Johnson testified that he "wouldn't be able to say" what was in the gun case if one were "set . . . in front of [him] today."

---

[13]Exhibit 113 is appended hereto in Appendix B.

The record does contain testimony from Gust's girlfriend, Lyons, that cases such as the one in dispute are "what are commonly referred to as gun cases" and the "type of case [that] ordinarily houses a gun." But, like the officers, Lyons was offering her opinion as a person "who has experience and knowledge" of gun cases. Moreover, her statements on their face are not unequivocal statements about the readily identifiable nature of the cases; Lyons is explaining that the cases are in fact the type of case commonly used for gun storage, not asserting that the cases are automatically recognizable to the general public as such. Finally, one cannot reasonably read Lyons' above statements as support for the proposition that the case in dispute is a container of such a nature that its contents can be readily inferred from its outward appearance when Lyons also testified that such cases "could hold other things" and that she would not "be able to tell [what was in the case] without opening it."[14]

**[5]** We hold that the district court erred in finding that the case in dispute is identifiable as a gun case based on its outward appearance alone, and in applying the "single-purpose container" exception to uphold the warrantless search of the case. Given that the district court had also ruled that the government could not justify the search based on consent or the exigent circumstances exception, Gust was entitled to have the sawed-off shotgun from the case and his post-search statements suppressed. "Because [Gust] entered a conditional guilty plea, we are required to remand and allow him to withdraw his plea if he elects to do so." *United States v. Grubbs*, 377 F.3d 1072, 1080 (9th Cir. 2004); *see also United States v. Mejia*, 69 F.3d 309, 316 n.8 (9th Cir. 1995) ("If *any* ruling that forms a basis for the conditional [guilty] plea is found to be erroneous, we are required to permit the defendant to with-

---

[14]We express no opinion whether Gust's pre-search admissions to the police that the cases contained guns should be relevant to determining whether Gust retained any expectation of privacy in the gun case, as neither party raised this issue on appeal.

draw his plea."). Accordingly, the district court's order denying Gust's suppression motion is reversed and the case is remanded for further proceedings.

**REVERSED and REMANDED.**