LIU, J., Concurring.
As today’s opinion explains, there is an important difference between two kinds of smell-related claims. One is that the detection of a distinctive odor through a police officer’s sense of smell may establish probable cause that a closed container holds contraband. This proposition is well established. (See Johnson v. United States (1948) 333 U.S. 10, 13 [92 L.Ed. 436, 68 S.Ct. 367] [smell of contraband may support probable cause where the officer is “qualified to know the odor, and [the odor] is one sufficiently distinctive to identify a forbidden substance”].) The other, quite different, claim is that the plain smell of contraband is sufficient by itself, apart from any other exception to the warrant requirement, to justify opening a closed container without a search warrant. This proposition, which *1244 is not well established, is said by some courts and the district attorney (District Attorney) here to rest on an analogy to the plain view doctrine in Fourth Amendment law. I write separately to explain why this analogy is inapt and to elucidate concerns that should give courts pause before authorizing warrantless searches of closed containers based solely on the smell of contraband.
I.
The difference between a seizure and a search underlies the disanalogy between the plain view doctrine and the purported plain smell justification for opening a closed container without a warrant. The plain view doctrine holds that an officer may seize an object in plain view without a warrant so long as the officer is lawfully present in the place from which the object is viewed, the incriminating nature of the object is immediately apparent, and the officer has a lawful right of access to seize the object. (See Horton v. California (1990) 496 U.S. 128, 136-137 [110 L.Ed.2d 112, 110 S.Ct. 2301] (Horton).) As the high court has explained, the officer’s conduct in such circumstances does not invade any Fourth Amendment privacy interest; it invades only the owner’s possessory interest in the object. (Horton, at pp. 133-134.) This distinction elucidates why the plain view doctrine is a doctrine about seizures, not searches: “The ‘plain-view’ doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. [Citations.] A seizure of the article, however, would obviously invade the owner’s possessory interest. [Citations.] If ‘plain view’ justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches.” (496 U.S. at pp. 133-134, fns. omitted.)
This difference between seizures and searches was recognized in one of our early Fourth Amendment cases addressing the issue of smell. In People v. Marshall (1968) 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665] (Marshall), the court rejected the argument that police could dispense with the warrant requirement when opening a closed container based on the smell of marijuana. The officers in Marshall entered an apartment to arrest a suspect for the sale of marijuana to an informant. No one was inside the apartment when they arrived, but an officer “detected a sweet odor” coming from a closed paper bag located in an open cardboard box inside an open bedroom closet. (Id. at p. 55.) The odor was similar to the smell of the marijuana previously sold to the informant. The officers opened the bag and found 21 plastic bags of marijuana.
*1245 In an opinion by Chief Justice Traynor, the court stated the general rule that “police officers may seize contraband evidence ‘in plain sight’ . . and observed that “[u]nder such circumstances there is, in fact, no search for evidence.” (Marshall, supra, 69 Cal.2d at p. 56.) But the marijuana in Marshall was not in plain sight; it was concealed inside a brown paper bag. (Id. at pp. 56-57.) In response to the Attorney General’s argument that “the marijuana should ... be deemed to have been in plain view of the officer” based on its odor, the court reasoned as follows: “[The Attorney General’s] contention overlooks the difference between probable cause to believe contraband will be found, which justifies the issuance of a search warrant, and observation of contraband in plain sight, which justifies seizure without a warrant. However strongly convinced officers may be that a search will reveal contraband, their belief, whether based on the sense of smell or other sources, does not justify a search without a warrant.” (Id. at p. 57.)
The court further explained: “In the present case the brown paper bag itself was not contraband. Only by prying into its hidden interior [citation] could the officer be sure that he was seizing contraband and nothing more. The fact that the container was only a brown paper bag instead of a packing box, purse, handbag, briefcase, hatbox, snuffbox, trunk, desk, or chest of drawers [citation] is immaterial. It is inherently impossible for the contents of a closed opaque container to be in plain view regardless of the size of the container or the material it is made of. A search of the container is necessary to disclose its contents. A search demands a search warrant.
“Of course officers may rely on their sense of smell to confirm their observation of already visible contraband. [Citations.] To hold, however, that an odor, either alone or with other evidence of invisible contents [,] can be deemed the same as or corollary to plain view, would open the door to snooping and rummaging through personal effects. Even a most acute sense of smell might mislead officers into fruitless invasions of privacy where no contraband is found.
“Moreover, however keen their sense of smell, officers cannot seize the thing they smell until they find it after looking for and through the places from which the odor emanates. In short, they must still conduct a search. . . . ‘In plain smell,’ therefore, is plainly not the equivalent of ‘in plain view.’ ” (Marshall, supra, 69 Cal.2d at pp. 58-59.)
Although Marshall’s authority as precedent was arguably undermined by a four-justice concurring opinion in Guidi v. Superior Court (1973) 10 Cal.3d 1 [109 Cal.Rptr. 684, 513 P.2d 908] (Guidi) urging that Marshall be overruled (see Guidi, at p. 19 (conc. opn. of Mosk, J.)), Guidi involved facts different from those in Marshall. The police in Guidi, after learning from an informant *1246 that two individuals suspected of selling hashish from a shopping bag were inside an apartment, entered the apartment and arrested the two suspects in the living room. One of the officers, Holt, then moved from the living room to the kitchen to investigate sounds coming from the rear of the apartment. In the kitchen, Officer Holt saw a shopping bag in plain view that smelled of hashish, and “[s]eizing the bag he found the 10 ‘baggies’ of hashish within.” (Id. at p. 5 (lead opn.).) On these facts, the court unanimously concluded that “the exigencies of the situation”—the possibility that other suspects remained in the apartment to protect the contraband—justified the warrantless search. (Id. at p. 19; see ibid. [“Having seen the described container of contraband in plain sight, Officer Holt was justified in ascertaining if it still contained the hashish, so as to evaluate the continuing danger of its violent defense.”].)
To the extent Marshall suggested that the smell of contraband coupled with exigent circumstances would not justify a warrantless search, Guidi said “it is no longer to be followed.” (Guidi, supra, 10 Cal.3d at p. 17, fn. 18; see People v. Cook (1975) 13 Cal.3d 663, 668, fn. 4 [119 Cal.Rptr. 500, 532 P.2d 148] (Cook) [“the result in Guidi was a pro tanto overruling of Marshall as to the particular issue” (italics added)], disapproved on other grounds in People v. Doolin (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11].) But Marshall itself, unlike Guidi, did not involve exigent circumstances, and none of our cases since Guidi has called into question Marshall’s holding that “[h]owever strongly convinced officers may be that a search will reveal contraband, their belief, whether based on the sense of smell or other sources, does not justify a search without a warrant” absent an established exception to the warrant requirement. (Marshall, supra, 69 Cal.2d at p. 57.) Further, Chief Justice Traynor’s lucid reasoning in Marshall, which carefully distinguished between a plain-view seizure and a plain-smell search, correctly anticipated the high court’s understanding that the plain-view seizure of a container “does not compromise the interest in preserving the privacy of its contents because it may only be opened pursuant to either a search warrant [citations], or one of the well-delineated exceptions to the warrant requirement. [Citations.]” (Horton, supra, 496 U.S. at p. 141, fn. 11.)
Like the observation of an object in plain view, the detection of the plain smell of marijuana does not involve any intrusion on privacy. No search has occurred within the meaning of the Fourth Amendment when an officer simply uses his nose to smell the odor of marijuana emanating from a closed container. However, unlike the mere act of sensory detection through sight or smell, the act of opening a closed container to expose its contents—whether it turns out to be contraband or something else—typically involves an intrusion on privacy and constitutes a search. The sense of smell, no less than any of the other senses, may give rise to probable cause to search. But probable cause ordinarily supports the issuance of a search warrant; it does not obviate the need for one.
*1247 There is nothing anomalous in the fact that the smell of contraband may be sufficient to justify opening a package with a warrant yet insufficient to justify opening it without a warrant. That is equally true of an informant’s tip, a police officer’s observation, or any other evidence supplying probable cause to conduct a search that is subject to the warrant requirement. The degree of suspicion supporting a search may be the same whether it is asserted beforehand in a warrant application or after the fact at a suppression hearing. But there is an important difference between requiring law enforcement officials to articulate their suspicion before searching for contraband and permitting officials to articulate their ex ante suspicion after contraband has already been found. That difference is a key reason why the law imposes the warrant requirement as a safeguard against excessive zeal or misconduct by law enforcement.
Further, it is no answer to say that the distinctive odor of marijuana may enable a trained officer to tell with virtual certainty what is inside a closed container, for the same degree of certainty might arise through a tip from an unfailingly reliable informant. In neither case does the accuracy of the officer’s suspicion bring the contents of a closed container into plain view such that seizure of those contents involves no search. As the high court has repeatedly said, even where “ ‘ [ijncontrovertible testimony of the senses . . . may establish the fullest possible measure of probable cause,’ ” the settled rule is that “ ‘no amount of probable cause can justify a warrantless search or seizure absent “exigent circumstances” ’ ” or some other established exception to the warrant requirement. (Horton, supra, 496 U.S. at p. 137, fn. 7, quoting Coolidge v. New Hampshire (1971) 403 U.S. 443, 468 [29 L.Ed.2d 564, 91 S.Ct. 2022].)
II.
Against this legal backdrop, the District Attorney contends that neither the act of smelling the package nor the act of opening it constitutes a search within the meaning of the Fourth Amendment because there is no reasonable expectation of privacy in a sealed package that reeks of marijuana. The argument is that no search warrant is required because no search occurs when police open a package whose contents have already announced themselves through their distinctive odor.
The United States Supreme Court has not resolved whether odor alone might negate a reasonable expectation of privacy in a sealed package, although the court flagged this issue in United States v. Johns (1985) 469 U.S. 478, 481 [83 L.Ed.2d 890, 105 S.Ct. 881] (Johns). There, customs officers investigating a drug smuggling operation smelled marijuana coming from two pickup trucks in which they also saw distinctive green packages consistent *1248 with a common means of wrapping marijuana. The officers seized the trucks and removed the packages, opening them three days later without a warrant. The high court upheld the warrantless search because the odor and sight of the packages gave the officers probable cause to search the trucks under the automobile exception to the warrant requirement. (Id. at p. 487.) The court acknowledged but did not address the argument that the odor of marijuana might negate an expectation of privacy in a closed container: “Whether respondents ever had a privacy interest in the packages reeking of marihuana is debatable. We have previously observed that certain containers may not support a reasonable expectation of privacy because their contents can be inferred from their outward appearance, [citing Arkansas v. Sanders (1979) 442 U.S. 753, 764-765, fn. 13 [61 L.Ed.2d 235, 99 S.Ct. 2586]], and based on this rationale the Fourth Circuit has held that ‘plain odor’ may justify a warrantless search of a container. [(U.S. v. Haley (4th Cir. 1982) 669 F.2d 201, 203-204 & fn. 3, cert. den. (1982) 457 U.S. 1117 [73 L.Ed.2d 1329, 102 S.Ct. 2928].)] The Ninth Circuit, however, rejected this approach [below,] [(U.S. v. Johns (9th Cir. 1983) 707 F.2d 1093, 1096)], and the Government has not pursued this issue on appeal. We need not determine whether respondents possessed a legitimate expectation of privacy in the packages.” (Johns, supra, 469 U.S. at p. 486.)
In citing footnote 13 of Sanders, the high court in Johns was referring to the following dictum suggesting that there is no legitimate expectation of privacy in a package whose contents can be inferred from its outward appearance: “Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to ‘plain view,’ thereby obviating the need for a warrant.” (Arkansas v. Sanders, supra, 442 U.S. at p. 765, fn. 13 (Sanders).) The high court in Sanders offered this dictum in order to draw a contrast between the example of a gun case or burglary kit and the container at issue in that case: a green suitcase with no outward indication of its contents. (See id. at pp. 755, 763-764.)
A four-justice plurality in Robbins v. California (1981) 453 U.S. 420 [69 L.Ed.2d 744, 101 S.Ct. 2841] (Robbins), reversed on other grounds in United States v. Ross (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157], elaborated on the Fourth Amendment exceptions suggested in footnote 13 of Sanders: “The second of these exceptions,” i.e., where a package’s contents are open to plain view, “obviously refers to items in a container that is not closed. The first exception is likewise little more than another variation of the ‘plain view’ exception, since, if the distinctive configuration of a container proclaims its contents, the contents cannot fairly be said to have been *1249 removed from a searching officer’s view.” (Robbins, at p. 427 (plur. opn. of Stewart, J.).) The Robbins plurality further elaborated: “Expectations of privacy are established by general social norms, and to fall within the second exception of the footnote in question a container must so clearly announce its contents, whether by its distinctive configuration, its transparency, or otherwise, that its contents are obvious to an observer.” (Id. at p. 428.) The Robbins plurality concluded that the exception did not apply on the facts there: “If indeed a green plastic wrapping reliably indicates that a package could only contain marihuana, that fact was not shown by the evidence of record in this case.” (Ibid.)
Although footnote 13 of Sanders was dicta, various courts have relied on it to uphold warrantless searches of closed containers with distinctive configurations. For example, in U.S. v. Banks (8th Cir. 2008) 514 F.3d 769 (Banks), the court upheld the warrantless search of a gun case that was “readily identifiable” as such because it was “ ‘a molded plastic case, a configuration handgun manufacturers commonly use when initially packaging a firearm for the end consumer,’ ” and “ ‘had the manufacturer’s name [“PHOENIX ARMS”], clearly indicating an arms product, imprinted on the entire length of the front of the case.. ..’ [Citation.]” (Id. at p. 775, italics added; see U.S. v. Taylor (D.C.Cir. 2007) 378 U.S. App.D.C. 158 [497 F.3d 673, 680] [upholding warrantless search of gun case]; U.S. v. Meada (1st Cir. 2005) 408 F.3d 14, 23 [distinctively configured gun case rendered its contents “unambiguous”].) Other courts, however, have required a search warrant where a gun case, though recognized by trained officers, was not readily identifiable as such to lay observers. (See U.S. v. Gust (9th Cir. 2005) 405 F.3d 797, 803 (Gust) [“courts should assess the nature of a container primarily ‘with reference to “general social norms” ’ rather than ‘solely ... by the experience and expertise of law enforcement officers’ ”]; U.S. v. Bonitz (10th Cir. 1987) 826 F.2d 954, 956 [same].)
Beyond gun cases and other single-purpose containers, federal courts of appeals have divided on whether other indicia, apart from outward appearance, may negate a reasonable expectation of privacy in the contents of a closed container. For example, courts have disagreed on whether the label on a container may justify a warrantless search. (Compare U.S. v. Morgan (6th Cir. 1984) 744 F.2d 1215, 1222 [“the labels on the bottles of pills made it ‘immediately apparent’ to the agents that the items were evidence of a crime”] & U.S. v. Eschweiler (7th Cir. 1984) 745 F.2d 435, 439 [envelope “said safe-deposit box key, and had the name of the bank on it”] with U.S. v. Villarreal (5th Cir. 1992) 963 F.2d 770, 776 [“a label on a container is not an invitation to search it” at least where the label does not indicate contraband].)
In addition, some cases have held that “ ‘the circumstances under which an officer finds the container may add to the apparent nature of its contents’ ” *1250 even when the container has no distinctive outward appearance. (U.S. v. Davis (4th Cir. 2012) 690 F.3d 226, 235; see id. at p. 236 [upholding warrantless search of a bag containing incriminating bloodstained clothes under a hospital bed where the officer knew “it was the practice and procedure of the hospital to place a patient’s clothing in a bag on the shelf under his bed”].) But this approach has been criticized. (See Gust, supra, 405 F.3d at p. 802 [Sanders exception requires container to be evaluated “without regard for the context in which it is found or the fact that the searching officer had special reasons to believe the container held contraband”]; U.S. v. Donnes (10th Cir. 1991) 947 F.2d 1430, 1438 [invalidating search of a camera lens case even though “the officer’s experience and training could have led him to infer that the camera lens case contained narcotics in light of the fact that it was found inside the glove with a syringe”]; U.S. v. Sylvester (5th Cir. 1988) 848 F.2d 520, 525 [invalidating search of a hunting box found at the scene of a suspected hunting offense because its “contents cannot be inferred from simply looking at the box”].) The latter cases limited the Sanders exception to containers whose contents may be inferred strictly from a container’s outward appearance out of concern that “the exception could swallow the warrant requirement . . . .” (Gust, at p. 802; see Banks, supra, 514 F.3d at p. 774 [Sanders “exception is limited to those rare containers that are designed for a single purpose”].)
There is similar conflict among the few courts that have addressed whether the smell of contraband can alone negate a reasonable expectation of privacy in a closed container. In U.S. v. Haley, supra, 669 F.2d 201, the Fourth Circuit said that in addition to a container’s outward appearance or distinctive configuration, “[a]nother characteristic which brings the contents into plain view is the odor given off by those contents.” (Id. at p. 203.) The court upheld the search of opaque plastic garbage bags on the ground that their “distinctive configuration together with the intense marijuana odor brought” their contents into plain view. (Id. at p. 204.) But the court went on to say: “We do not imply that both distinctive configuration and odor are necessary to justify the search of the containers. This Court has previously held that odor alone is sufficient cause to search such containers as cardboard boxes.” (Id. at p. 204, fn. 3, citing U.S. v. Sifuentes (4th Cir. 1974) 504 F.2d 845, 848 [interpreting “plain view” to mean “obvious to the senses” through odor as well as sight].) The Eleventh Circuit has also endorsed this view. (See U.S. v. Epps (11th Cir. 2010) 613 F.3d 1093, 1098 [“[W]e have upheld a warrantless search of closed, opaque packages that reeked of marijuana.”].)
By contrast, the Ninth Circuit in U.S. v. Johns rejected the argument that because the smell of marijuana “brought that contraband into plain view,” customs officers had authority to search closed packages without a warrant. (U.S. v. Johns, supra, 707 F.2d at p. 1096, revd. on other grounds in Johns, supra, 469 U.S. at p. 487.) While acknowledging that the smell of marijuana *1251 provided probable cause for a plain-view seizure of the packages, the Ninth Circuit said “[i]t is a different question . . . whether an opaque container that is properly seized may be searched.” (U.S. v. Johns, 707 F.2d at p. 1095.) “Our precedent . . . directs that while the odor of marijuana smelled by the agents would contribute to probable cause to believe that the container held contraband, a recognized exception to the warrant requirement was necessary to justify a warrantless search. [Citation.] The odor and circumstances of the seizure supplied the probable cause for a search warrant. They did not eliminate the need for one.” (Id. at p. 1096, fn. omitted.) The court declined to apply the Sanders exception because “[t]he wrapped bales here did not announce their contents with sufficient clarity to eliminate the need for a warrant.” (Id. at p. 1096, fn. 2.) The Second Circuit has similarly rejected the contention that a distinctive odor can, by itself, bring the contents of a closed container into plain view. (U.S. v. Dien (2d Cir. 1979) 609 F.2d 1038, 1045.)
In considering this split of authority, it is important to note that although courts have applied the Sanders dictum with varying results, the United States Supreme Court has never itself applied the Sanders dictum to uphold a warrantless search of a closed container on the theory that its outward appearance or any other characteristic announced its contents. In California, only two published cases have applied the Sanders dictum to uphold a warrantless search; neither addressed the question before us. (See People v. Green (1981) 115 Cal.App.3d 259 [171 Cal.Rptr. 210] [upholding search of a gun case]; People v. Johnson (1981) 123 Cal.App.3d Supp. 26 [177 Cal.Rptr. 320] [upholding search of a suitcase where defendant told officers it contained marijuana].) In People v. Chavers (1983) 33 Cal.3d 462 [189 Cal.Rptr. 169, 658 P.2d 96] (Chavers), this court, without citing Sanders, allowed an officer to open a plastic shaving kit after he had lawfully “lifted [it]” and “felt the outline of a gun.” (Chavers, at p. 466.) But Chavers, like Guidi, upheld the warrantless search in the context of exigent circumstances. (Chavers, at p. 473 [the gun was “an extremely dangerous instrument posing significant and immediate risks both to the police and to members of the public in the immediately surrounding area”].)
Chavers relied on Guidi and on People v. Lilienthal (1978) 22 Cal.3d 891 [150 Cal.Rptr. 910, 587 P.2d 706], which upheld the warrantless seizure of a distinctively folded square piece of paper that fell from a suspect’s wallet during a traffic stop. Noting the officer’s “experience in making numerous arrests where cocaine or heroin was transported in paper bindles similar to the one dropped by defendant” (id. at p. 898), the court in Lilienthal concluded that the officer was “justified in making the plain view seizure of the paper” (id. at p. 899). But Lilienthal did not address whether it was lawful for the officer to open the paper after seizing it. Chavers also relied on People v. Guy (1980) 107 Cal.App.3d 593 [165 Cal.Rptr. 463], where the officer “[u]pon lifting the baggie . . . was able to conclude it contained a *1252 controlled substance.” (Id. at p. 599.) But there, the plastic baggie was transparent, and “[t]he contraband was in plain sight.” (Id. at p. 600.)
The unsettled scope of the Sanders dictum and the great variety of factual scenarios potentially implicating it should give courts substantial pause before extending it to hold that a distinctive odor may negate any reasonable expectation of privacy in the contents of a closed container. (See Flippo v. West Virginia (1999) 528 U.S. 11, 13 [145 L.Ed.2d 16, 120 S.Ct. 7] [exceptions to the warrant requirement must be “narrow and well-delineated”]; People v. Escudero (1979) 23 Cal.3d 800, 811 [153 Cal.Rptr. 825, 592 P.2d 312] [“the courts must ever be on their guard to keep [exceptions to the warrant requirement] within firm and narrow bounds . . .”].) It may seem commonsensical to say that petitioner here could not have had a reasonable expectation of privacy in a sealed package that reeked of marijuana and turned out to contain marijuana. But it is a cardinal Fourth Amendment principle that “the ‘reasonable person’ test presupposes an innocent person.” (Florida v. Bostick (1991) 501 U.S. 429, 438 [115 L.Ed.2d 389, 111 S.Ct. 2382].) And it is not difficult to contemplate situations where the smell of marijuana emanating from a closed container does not clearly or accurately announce its contents.
For one thing, the record here does not indicate whether the package smelled of burned or unbumed marijuana. Yet courts, including ours, have recognized “a commonsense distinction between the smells of burnt and raw marijuana.” (U.S. v. Downs (10th Cir. 1998) 151 F.3d 1301, 1303; see Wimberly v. Superior Court (1976) 16 Cal.3d 557, 571-572 [128 Cal.Rptr. 641, 547 P.2d 417] (Wimberly); State v. Larson (2010) 2010 MT 236 [358 Mont. 156, 243 P.3d 1130, 1142]; Bailey v. State (2010) 412 Md. 349 [987 A.2d 72, 91]; Commonwealth v. Waddell (2012) 2012 PASuper 252 [61 A.3d 198, 217-218]; Meek v. State (Ind.Ct.App. 2011) 950 N.E.2d 816, 818; Taylor v. State (Fla.Dist.Ct.App. 2009) 13 So.3d 77, 79.) Because “the smell of burnt marijuana is generally consistent with personal use of marijuana” (Downs, at p. 1303), the smell does not necessarily indicate the presence of marijuana when it emanates from a closed container. As is familiar to anyone who has sat at a bar, in a lounge, or on an airplane before the widespread advent of smoking prohibitions, the permeation of smoke into clothes, purses, briefcases, backpacks, or other articles can leave a strong and lasting odor. Similarly, an object or person present in a room, car, or other space where marijuana is burned may acquire a distinctive smell, even though the object or person does not hold marijuana. -
Prior to the high court’s decisions expanding the scope of automobile searches (see maj. opn., ante, at pp. 1228-1232), we held that “the odor of burnt marijuana” supported the reasonableness of searching a car’s interior *1253 for evidence of “casual” or “personal” use of marijuana, but did not by itself provide reasonable grounds to search the vehicle’s trunk for raw marijuana to be transported or sold. (Wimberly, supra, 16 Cal.3d at pp. 572-573.) In Wimberly, we “differentiate^] between the casual user and the dealer of narcotics” and explained that the smell of burned marijuana provided reason to suspect the former but not the latter. (Id. at p. 572; accord, U.S. v. Nielsen (10th Cir. 1993) 9 F.3d 1487, 1491 [smell of burnt marijuana in car’s passenger compartment did not provide probable cause to believe the car’s trunk contained marijuana].) As these cases suggest, the smell of burned marijuana emanating from a sealed package may indicate that the package or its contents have been in a place where marijuana was consumed. But it does not necessarily indicate that the package contains marijuana. At the very least, it is questionable whether the smell “so clearly announce^] its contents” as to render those contents “obvious to an observer” and thereby negate any reasonable expectation of privacy. (Robbins, supra, 453 U.S. at p. 428 (plur. opn.).)
Moreover, even assuming that an ordinary observer can distinguish between raw and burned marijuana, the fact that a sealed package smells of raw marijuana does not necessarily reveal that the package contains marijuana. Like the smell of burned marijuana, the smell of unbumed marijuana may be due to a transferred or residual odor. In People v. Gale (1973) 9 Cal.3d 788 [108 Cal.Rptr. 852, 511 P.2d 1204] (Gale), the “defendant’s clothing . . . smelled strongly of marijuana” (id. at p. 792), and “both officers testified they detected a strong odor of fresh marijuana apparently emanating from defendant’s person” (id. at p. 793, fn. 4). But “[a] search of defendant’s person disclosed ... no marijuana or other contraband.” (Id. at p. 792; see U.S. v. Quintana (M.D.Fla. 2009) 594 F.Supp.2d 1291, 1295 [duffel bag “smelled strongly of raw marijuana” but police “found no marijuana inside the bag”]; State v. Davis (La.Ct.App. 1991) 580 So.2d 1046, 1048 [police “detected a strong odor of raw marijuana during the vehicle search” but “found no marijuana”].) As these examples show, it is not difficult to conjure scenarios in which the smell of marijuana emanating from an otherwise nondescript package does not reveal its contents with a level of clarity akin to plain view.
It may be possible for a marijuana odor emanating from a closed container to be so distinctive and intense that no one could have a reasonable expectation of privacy in the container’s contents. As today’s opinion notes, the record in this case does not permit us to resolve that issue one way or the other. (See maj. opn., ante, at pp. 1242-1243.) The discussion above suggests there are substantial hurdles that such a plain smell doctrine would have to overcome to justify departing from the clear, administrable rule that opening a closed container requires a search warrant.
*1254 My observations cast no doubt on the settled proposition that the smell of marijuana can establish probable cause to search and, in the context of an automobile search or exigent circumstances, can provide a sufficient basis to proceed without a warrant. (See, e.g., Cook, supra, 13 Cal.3d at pp. 668-670; Gale, supra, 9 Cal.3d at p. 794; Mann v. Superior Court (1970) 3 Cal.3d 1, 7 [88 Cal.Rptr. 380, 472 P.2d 468].) But it is an altogether different proposition to contend that the smell of marijuana can be sufficient by itself to negate any reasonable expectation of privacy in a closed container. Although the high court has suggested that there might be no legitimate expectation of privacy in a container whose “outward appearance” (Sanders, supra, 442 U.S. at p. 765, fn. 13) or “distinctive configuration” (Robbins, supra, 453 U.S. at p. 428 (plur. opn.)) clearly announces its contents, neither the high court nor this court has upheld a warrantless search solely on the basis of Sanders' s posited expansion of the plain view doctrine. Lower courts have not agreed on the scope or proper application of the Sanders dictum, and the breadth of circumstances potentially implicating it is cause for caution. Moreover, it is questionable whether the smell of marijuana alone can reveal the contents of a closed container so clearly as to eliminate any legitimate privacy interest.
In sum, there is ample reason for courts, including ours, to hesitate before accepting a novel legal theory that would allow the search of a closed container to proceed without a warrant based solely on the smell of contraband.
Werdegar, J., concurred.