**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 25 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   22-50293 |
| Plaintiff-Appellant, | D.C. No. 2:20-cr-00553-FMO-1 |
| v. | |
| MALINA JO GREEN, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge, Presiding

Argued and Submitted January 8, 2024
Pasadena, California

Before:  CHRISTEN and BENNETT, Circuit Judges, and KATZMANN,** Judge.

The United States of America appeals the district court's order granting

Defendant Malina Green's motion to suppress.  Because the parties are familiar

with the facts, we do not recount them here.  We have jurisdiction pursuant to 18

U.S.C. § 3731, and we review the district court's ruling on a motion to suppress de

---

\*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*        The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

novo and its underlying factual findings for clear error, *United States v. Grandberry*, 730 F.3d 968, 970-71 (9th Cir. 2013).  We reverse and remand.

1.  The Government first argues that the officers' warrantless search of Green's suitcase satisfies the administrative search exception to the Fourth Amendment's warrant requirement.  The Government contends this exception allowed officers to search Green's suitcase to rule out the possibility that it contained hazardous materials like fentanyl.

Under our precedent, airport screening searches are permissible administrative searches because they are "conducted as part of a general regulatory scheme in furtherance of an administrative purpose, namely, to prevent the carrying of weapons or explosives aboard aircraft, and thereby to prevent hijackings." *United States v. Aukai*, 497 F.3d 955, 960 (9th Cir. 2007) (en banc) (citation omitted).  "A particular airport security screening search is constitutionally reasonable provided that it 'is no more extensive nor intensive than necessary, in the light of current technology, to detect the presence of weapons or explosives and that it is confined in good faith to that purpose.'" *Id.* at 962 (alterations accepted) (citation omitted).

To show that fentanyl poses the sort of risk encompassed by this administrative purpose, the Government relies in part on a Drug Enforcement Administration (DEA) press release from 2016, which suggests that incidental

exposure to fentanyl presents a lethal risk to law enforcement officers. The district court found that the scientific community had uniformly rejected this theory. The district court cited, among other sources, a 2020 journal article that identified this press release as an example of "misinformation about risks of fentanyl contact," and a 2017 position statement from the American College of Medical Toxicology and the American Academy of Clinical Toxicology that explained "the risk of clinically significant exposure [from fentanyl] to emergency responders is extremely low." The district court also noted that recommendations from an interagency committee (of which the DEA was a member) recognized that incidental exposure to fentanyl "poses only a minimal risk."

At oral argument before our court, counsel for the Government suggested that DEA's position had not been discredited, and that the 2016 press release remained "ongoing guidance from DEA" that had not been retracted or changed. The Government did not grapple with the district court's factual findings or acknowledge that the press release is no longer accessible on DEA's website.[1]

Ultimately, we need not resolve whether fentanyl presents the sort of danger envisioned by our precedent on airport screening searches because we conclude that the search of Green's suitcase satisfied the single-purpose container exception.

---

[1] *Page Not Found*, U.S. Drug Enf't Admin. (last visited Apr. 3, 2024), www.dea.gov/press-releases/2016/06/10/dea-warning-police-and-public-fentanyl-exposure-kills.

2.  The single-purpose container exception is "little more than another variation of the 'plain view' exception, since, if the distinctive configuration of a container proclaims its contents, the contents cannot fairly be said to have been removed from a searching officer's view." *United States v. Gust*, 405 F.3d 797, 800 (9th Cir. 2005) (quoting *Robbins v. California*, 453 U.S. 420, 427 (1981) (plurality opinion), *overruled on other grounds by United States v. Ross*, 456 U.S. 798 (1982)); *see also United States v. Huffhines*, 967 F.2d 314, 319 (9th Cir. 1992) ("There can be no reasonable expectation of privacy in a container if its contents can be discerned from its outward appearance."). In determining the applicability of the exception, courts evaluate "the nature of containers from the objective viewpoint of a layperson, rather than from the subjective viewpoint of a trained law enforcement officer, and without sole reliance on the specific circumstances in which the containers were discovered." *Gust*, 405 F.3d at 801.

Our review of the record, which includes the same photographs and written declarations that were available to the district court,[2] leads us to conclude that a layperson would readily ascertain that the packages in Green's suitcase contained illicit drugs. After Green's checked suitcase set off an alarm during a security screening, officers opened it and discovered two clear vacuum-sealed clothing bags, inside of which were three smaller vacuum-sealed packages and clothing.

---

[2] The district court did not conduct an evidentiary hearing.

These packages were wrapped in multiple layers of transparent plastic, and weighed approximately one kilogram each. Each package contained an unknown substance wrapped in dryer sheets, which were visible through the layers of plastic wrap.

The district court found that because multiple layers of packaging covered the contents of the packages, a layperson would not be able to infer the contents of the packages based on their outward appearance alone. But packages need not be transparent to announce their contents. *See Gust*, 405 F.3d at 801 (noting that "a container must so clearly announce its contents, *whether by its distinctive configuration*, its transparency, *or otherwise*, that its contents are obvious to an observer" (emphasis added) (quoting *Robbins*, 453 U.S. at 428)). Although the packages were opaque and concealed their contents from visual inspection, the distinct configuration of the packages—one-kilogram packages wrapped in dryer sheets and vacuum-sealed plastic and concealed in checked luggage—made it obvious that they contained drugs. *See, e.g.*, *Huffhines*, 967 F.2d at 319 (concluding that one could discern that a gun was in a plastic bag, even though the bag was opaque). The use of visible dryer sheets is particularly significant because their purpose is plainly to disguise the scent of the contents they conceal. Because the outward appearance of the packages made their illicit contents obvious, the officers' search satisfied the single-purpose container exception.

**REVERSED AND REMANDED.**